805 F.2d 1037
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Louis George GIAVASIS, Defendant-Appellant.
 Nos. 85-3557, 85-3558.
 United States Court of Appeals, Sixth Circuit.
 Oct. 15, 1986.
 
 Before MILBURN and BOGGS, Circuit Judges, and DeMASCIO, District Judge*.
 PER CURIAM.
 
 
 1
 Following the denial of his motion to suppress and motion in limine, defendant entered a Rule 11(a)(2) conditional plea of guilty to several counts of a multiple-count indictment. Defendant lists the convictions before the court as follows[1]: conspiracy to possess and distribute cocaine in violation of 21 U.S.C. Sec. 846; conspiracy to transport money in violation of 31 U.S.C. Sec. 5316(a); possession of cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2; and delivery of a firearm to a common or contract carrier in violation of 18 U.S.C. Secs. 922(e) and 924(b). On appeal from the judgment entered on his plea, defendant raises the issue of whether the privilege for confidential marital communications bars the government's use of evidence obtained from his non-criminal wife and evidence obtained as a result of information provided by the non-criminal wife. Defendant also appeals the district court's denial of his motion to exclude testimony which he argues would violate the privilege for confidential marital communications. Because we agree with the district court that admission of the evidence and testimony in question is not prohibited by the marital privilege, we affirm.
 
 I.
 
 2
 In 1984, defendant Louis Giavasis and his wife, Judy Giavasis, resided in Canton, Ohio. On April 19, 1984, while defendant was away from home, but while Mrs. Giavasis and others were home, two armed men broke in their home. While in the home, the robbers asked for defendant and another man and indicated they were looking for cocaine and money. After unsuccessfully searching the house, the robbers left, and the police were summoned. Shortly thereafter, while the police were still at defendant's residence, defendant returned, and, with Mrs. Giavasis watching, he gave two plastic bags containing a white substance to their adult son to take out of the house.
 
 
 3
 Mrs. Giavasis, after unsuccessfully attempting to speak with her husband about the cocaine, consulted a Catholic priest who, in turn, referred her to Detective Wilson of the Massillon Police Department. Pursuant to Detective Wilson's request, Mrs. Giavasis obtained a sample of the white substance. After it was confirmed that the substance was cocaine, Detective Wilson referred the case to Federal Special Agent Berarducci. At the request of Agent Berarducci, Mrs. Giavasis subsequently provided samples of other cocaine stored in the home shared with her husband. Additionally, Mrs. Giavasis, who was in touch with federal agents daily, provided discarded airline tickets, her husband's passport, and miscellaneous other items. Mrs. Giavasis also kept Detective Wilson and Agent Berarducci informed on defendant's travel plans. Specifically, on one occasion, Mrs. Giavasis notified the police that defendant would be importing cocaine by concealing it in his boot.
 
 
 4
 On October 21, 1984, defendant was arrested upon his re-entry to the United States at the Jacksonville International Airport. A search of the inside of his boots revealed 413 grams of cocaine. A federal grand jury sitting in the Middle District of Florida returned a two-count indictment based on this arrest. On November 15, 1984, a federal grand jury sitting in the Northern District of Ohio returned a twenty-five count indictment against defendant. Defendant subsequently filed a motion to suppress and a motion in limine. In these motions, defendant asked that the court suppress all evidence acquired from or through his wife. Defendant's motions were premised on his argument that the evidence in question had been obtained "unconstitutionally" since it was, in his view, obtained in violation of the privilege for confidential marital communications.
 
 
 5
 Following a voir dire examination of Mrs. Giavasis and oral and written argument, the district court denied defendant's motions. The district court concluded that confidential communications made by a spouse concerning his or her patently illegal activities are not a privileged communication. As an alternate holding, the district court held that the physical evidence seized fell without the privilege for confidential marital communications because "the information and the evidence that the wife ... obtained and gave to the government was not the result of any confidential communication."
 
 
 6
 Following the district court's denial of his motion to suppress and motion in limine, defendant entered a Rule 11(a)(2) conditional guilty plea on four counts of the indictment, preserving the right to appeal the denial of his motion to suppress and motion in limine.[2]
 
 II.
 
 7
 In addressing defendant's argument on appeal, we think it is important to begin by noting that there are three types of evidence at issue. First, there is the physical evidence turned over to the government by Mrs. Giavasis. Second, there is evidence seized as the result of information related to the government by Mrs. Giavasis. (Some of the information relied on by the government in obtaining this evidence was acquired by Mrs. Giavasis in conversations with her husband.) Third, there is the testimony of Mrs. Giavasis. This third type of evidence includes two subtypes: testimony which relates (a) to what she saw, and (b) to what her husband told her. As to the latter subcategory, the government took the position in its Response in Opposition to Defendant's Motion to Suppress and In Limine that it would not question Mrs. Giavasis at the defendant's trial about communications between defendant and his wife. Supplement to App. at 13.
 
 A. The Marital Privilege
 
 8
 There are two categories of marital privilege. First, there is the "privilege against adverse spousal testimony" directly addressed by the Supreme Court in Trammel v. United States, 445 U.S. 40, 100 S.Ct. 906 (1980). In Trammel, the Court modified the adverse spousal testimony privilege "so that the witness spouse alone has a privilege to refuse to testify adversely...." 445 U.S. at 53, 100 S.Ct. at 914. Here, since Mrs. Giavasis has not refused to testify, this category of marital privilege has no application.
 
 
 9
 The second category of marital privilege covers confidential communications. It is this category which defendant urges is applicable here. Since the issue was not presented in Trammel, the Supreme Court did not address the privilege for marital confidences. 445 U.S. at 45 n. 5, 100 S.Ct. 909 n. 5. The confidential communications privilege was, however, recently addressed by this court in United States v. Sims, 755 F.2d 1239, 1241 (6th Cir.), cert. denied, 105 S.Ct. 3533 (1985). In Sims, we concluded that "although the privilege against adverse spousal testimony vests in the witness, the defendant retains the privilege to foreclose testimony regarding confidential marital communications...." 755 F.2d at 1241. In Sims we then went on to adopt the "joint participants" exception (sometimes called the crime-fraud exception) to the confidential marital communications privilege. In so doing, we stated, "Only where spouses engage in conversations regarding joint ongoing or future patently illegal activity does the public's interest in discovering the truth about criminal activity outweigh the public's interest in protecting the privacy of marriage." 755 F.2d at 1243 (emphasis added).
 
 
 10
 Judge Weinstein, in his treatise on evidence, has set out the
 
 
 11
 three basic prerequisites to the assertion of the communications privilege. First, at the time of the communication, there must have been a marriage recognized as valid by state law....
 
 
 12
 ... [S]econd[,] ... there must have been a communication with respect to which the privilege is asserted. Although some federal courts have acknowledged, in dictum, that "inter-spousal communications are not limited to speaking and writing," the federal courts have generally stated that the privilege "applies only to utterances or expressions intended by one spouse to convey a message to the other" and have not recognized, under the facts of the case before them, observations made of a spouse's activities or appearance as communications covered by the privilege. This approach is consistent with the view that privileges should be narrowly construed....
 
 
 13
 [The third] prerequisite to the assertion of the privilege is that the communication be made in confidence.
 
 
 14
 2 J. Weinstein & M. Burger, Weinstein's Evidence p 505, at 326-27 (Supp.1986).
 
 B. Application
 
 15
 With this background, we turn to the three types of evidence at issue in this case. First, there is the physical evidence (e.g., cocaine, airline ticket stubs, and the passport) which Mrs. Giavasis turned over to law enforcement officials. Privileges, of course, only protect against the disclosure of marital confidences in testimony, not cooperation with law enforcement officials. That is, privileges only give the holder the right not to testify or to prevent someone else from testifying. See, e.g., Trammel, 445 U.S. at 52 n. 12, 100 S.Ct. at 913 n. 12 ("It is only the spouse's testimony in the courtroom that is prohibited."); cf. Fed.R.Evid. 1101(c) (privileges apply to all stages of proceedings). Thus, physical evidence could not be excluded based on the communications privilege.
 
 
 16
 The second type of evidence--evidence seized as a result of information given to the government by Mrs. Giavasis--would be admissible for the same reason. Since Mrs. Giavasis was not testifying "in the courtroom," the privilege rules do not prevent her disclosure of information to the police. Thus, evidence obtained as a result of those disclosures is not inadmissible. Cf. 2 J. Weinstein & M. Burger, Weinstein's Evidence p 505 at 505-19 (1985) ("Cooperation with the authorities did not necessarily lead to a provable case where there was no witness available to testify.").
 
 
 17
 Within the third category of evidence, we previously addressed subcategory (a)--i.e., testimony as to acts--in United States v. Robinson, 763 F.2d 778 (6th Cir.1985). In Robinson we recognized the fundamental principle that the confidential communication privilege "applies only to conduct and expressions intended to be a communication"--not to testimony as to "acts." Id. at 783.
 
 
 18
 The second subtype of evidence at issue here is Mrs. Giavasis' testimony as to confidential communications with her husband. As noted above, the district court concluded that confidential communications made by a spouse concerning his or her patently illegal activities are not a privileged communication. In so holding, the district court extended the crime-fraud exception beyond the parameters announced by this court in Sims. Although we think the district court's opinion expanding the crime-fraud exception is both well reasoned and persuasive, we think it unnecessary to reach that issue in the instant case.
 
 
 19
 As is reflected in the record on appeal, and as counsel for defendant agreed at oral argument, the government's position from the outset has been that it would not use Mrs. Giavasis' testimony as to confidential communications that she had with defendant. The government only "maintaine[d] that it [could] question Mrs. Giavasis as to what she saw, what she alone said or did, and what she heard in the presence of third persons." Supplement to App. at 13. Since the government did not seek to use Mrs. Giavasis' testimony as to confidential communications, it is unnecessary for this court to decide whether that testimony would have been admissible under the crime-fraud exception.
 
 III.
 
 20
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 21
 DeMASCIO, District Judge, dissenting.
 
 
 22
 This appeal considers two pretrial motions filed in the district court: a motion in limine seeking to exclude from evidence confidential marital communications and a motion to suppress evidence that defendant contends was obtained "unconstitutionally" in violation of the marital privilege. The district court denied both motions. The defendant then entered a guilty plea, pursuant to Rule 11 Fed.R.Crim.P. As part of his plea agreement, the government agreed that defendant could preserve for appeal the denial of his two motions. That agreement presumed that a motion in limine asserting a marital privilege is appealable. In my view it is not. I would dismiss this appeal out of hand. It does not raise any appealable issue that I can discern.
 
 
 23
 An analysis of the marital privilege must take into account the rights of each spouse to the marriage. Some writers discuss the subject as though two distinct privileges arise from the marital relationship. 8 J. Wigmore, Evidence Sec. 2334 (McNaughton rev. 1961). The oldest is the privilege against adverse spousal testimony, which vests in the witness-spouse alone; the witness spouse may neither be compelled to testify against the defendant-spouse nor foreclosed from adversely testifying. Trammel v. United States, 445 U.S. 40, 52 (1980). Obviously, this aspect of the privilege is inapplicable here since Mrs. Giavasis acted voluntarily in supplying the government with incriminating information leading to her husband's arrest.
 
 
 24
 The more recent rule is the privilege for confidential marital communications that protects confidential information privately disclosed between a husband and wife. Blau v. United States, 340 U.S. 332 (1951). Under this latter rule, if Mrs. Giavasis elected to disclose at trial confidential marital communications, the defendant husband could then assert his marital privilege to exclude testimony disclosing confidential marital communications. The privilege is implicated at trial and then only if the government seeks to elicit testimony concerning a confidential marital communication. At oral argument, the government acknowledged that it would not have sought to violate the privilege by inquiring into confidential communications because it did not need that evidence to successfully prosecute the defendant. In any event, when the defendant entered his guilty plea, he waived his right to assert the marital privilege just as assuredly as he waived critical constitutional rights.
 
 
 25
 The motion to suppress filed by the defendant was thus entirely superfluous. If the defendant's marital privilege were sustained at trial, the evidence would have been excluded and the need to suppress it would never arise. In any event, the marital privilege does not have constitutional underpinnings. Hence, the motion to suppress based upon that ground is frivolous. In my view, this analysis requires us to dismiss this appeal whether the "defendant's motions in the instant case are inextricably intertwined" or not.
 
 
 26
 The panel seems to indicate that the language in Fed.R.Crim.P. 11(a)(2) permits a defendant to appeal "any pretrial motion" by simply entering a conditional plea of guilty. It is clear, however, that a district court's denial of a motion in limine is not appealable at all under the circumstances presented here. The parties cannot create an appealable issue by simply agreeing to a conditional plea. In Luce v. United States, 105 S.Ct. 460 (1984), the Supreme Court held that the denial of a defendant's motion in limine to exclude evidence of his prior convictions is not appealable even after trial, unless the defendant takes the witness stand. The Court there pointed to several difficulties that would arise if courts of appeal were forced to rule on subtle evidentiary questions outside a concrete factual context. In particular, the Court noted that:
 
 
 27
 [t]he ruling is subject to change when the case unfolds, particularly if the actual testimony is different from what was contained in the defendant's proffer. Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous motion in limine ruling. 105 S.Ct. at 463.
 
 
 28
 Hence, in Luce a motion in limine that clearly had an effect on the defendant's constitutional right to testify in his own defense was not appealable. Nevertheless, this panel is willing to treat an anticipated violation of a marital privilege as appealable. When Luce was before this court, Judge Kennedy pointed out that a motion in limine is nothing more than a "request for guidance by the court regarding an evidentiary question. * * * [Moreover], we see no reason why the trial court could not change its ruling, for whatever reason, when the evidence is actually offered and objected to at trial." Because the issues considered in this appeal are not based upon a full trial record, I believe it is a mistake for this court to review the matter on appeal. United States v. Luce, 713 F.2d 1236, 1239 (6th Cir.1983).
 
 
 29
 Another difficulty I have with the majority opinion is that it sanctions an unwarranted interpretation of Fed.R.Crim.P. 11(a)(2). It seems to me that a ruling on a motion cannot be made a part of a conditional plea unless the motion is dispositive of the litigation. Hence, it is clear that a motion to suppress evidence on fourth amendment grounds can be the subject of a conditional plea. In such a situation, an appeals court may suppress the evidence which would resolve the entire litigation. To the contrary, defendant's motions here involve no more than the parameters of a witness's testimony at trial. If Rule 11(a)(2) is given the interpretation sanctioned by the panel, any imaginative criminal defense lawyer can reserve for appeal any issue upon which the district judge rules unfavorably. The merits of adopting Rule 11 aside, surely Rule 11(a)(2) was never intended to give every defendant two bites of the apple.
 
 
 
 *
 Honorable Robert E. DeMascio, Judge, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The joint appendix is somewhat unclear on this point. Since precisely what defendant stands convicted of is not relevant to the issues before the court, we accept defendant's assertion of these facts
 
 
 [2]
 Although the denial of a motion in limine is not appealable in some contexts, see, e.g., Luce v. United States, 469 U.S. 38, 105 S.Ct. 460 (1984) (in a case which was tried, the Court held that the district court's denial of defendant's motion in limine on question of admissibility of prior convictions for impeachment purposes was not appealable as defendant did not testify), denial may be reviewed in an appeal from a Rule 11(a)(2) conditional guilty plea. Fed.R.Crim.P. 11(a)(2) specifically provides:
 Conditional Pleas. With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.
 (Emphasis supplied). We think the language of the rule is clear. Further, we find support for our conclusion in the fact that at least one other circuit has reviewed in limine rulings following the acceptance of a conditional plea of guilty. See United States v. Goodacre, 793 F.2d 1124 (9th Cir.1986) (where defendant appealed, and the court addressed, the district court's in limine ruling that defendant's "offer of proof did not show the requisite degree of government responsibility for an alleged entrapment to submit the entrapment question to a jury."); United States v. Williams, 791 F.2d 1383 (9th Cir.1986) (where a defendant entered a conditional guilty plea following the district court's grant of the government's motion in limine to preclude defendant from presenting evidence of duress). We know of no authority for the proposition that a defendant cannot (with the approval of the court and the consent of the government) reserve the right to appeal from an adverse ruling on a motion in limine through a conditional guilty plea. The defendant's motions in the instant case are inextricably intertwined, and there is no way to separate the defendant's motion to suppress from his motion in limine.