931 F.2d 57
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Cleveland C. WERTS, Defendant-Appellant.
 No. 90-1840.
 United States Court of Appeals, Sixth Circuit.
 April 23, 1991.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant Cleveland Werts ("Werts"), appeals from the March 15, 1990, jury verdict and July 17, 1990, sentence in this conviction for uttering forged endorsements on United States Treasury checks in violation of 18 U.S.C. Sec. 510(a)(2). For the reasons stated below, we AFFIRM.
 
 I.
 
 2
 Werts was involved in two separate check-cashing schemes which overlapped in time. In one, he passed twenty-two social security checks, issued in the name of Kathryn Callahan ("Callahan"), at the M & M bar in Detroit from January 3, 1984, through September 3, 1986. In the other, he passed another five social security checks, these issued in the name of Tom Norris ("Norris"), from August 2, 1985, through December 15, 1985. Werts was aware that the rightful payee of each check, either Callahan or Norris, had died prior to the time that Werts received the checks.
 
 
 3
 Werts had two different accomplices in these separate and unrelated schemes. Louise Werts, Werts' estranged wife, provided Werts with the Norris checks. (Norris had been Louise Werts' boyfriend and cohabitant after the Werts' separation.) Werts cashed them and kept half the proceeds. Werts offered Kathryn Campbell ("Campbell"), daughter of the deceased Callahan, to help her cash the checks of Callahan. Campbell gave the checks to Werts. Werts cashed them and retained half of the proceeds.
 
 
 4
 Special Agents Andrew Harris ("Harris") and Anthony Arcudi of the United States Secret Service conducted an investigation of the two schemes. They interviewed Werts separately. On March 2, 1988, Harris went with Detroit Police Department Detective John Moore ("Moore") to Werts' residence at 6089 Stanford in Detroit. Harris and Moore interviewed Werts concerning the Norris checks. Harris testified that Werts let the agents inside and spoke with them voluntarily. Werts was not taken into custody at that time and was advised orally by Harris that he did not have to answer any questions. Harris did not advise Werts of his Miranda rights at this time. Werts responded to questions, acknowledging his involvement in the cashing of the Norris checks. Werts also wrote and signed a statement for Harris concerning the checks.
 
 
 5
 On September 27, 1989, Werts was indicted on two counts of uttering forged endorsements on United States Treasury Checks, in violation of 18 U.S.C. Sec. 510(a)(2). A jury trial was held on March 12, 1990, to March 15, 1990.
 
 
 6
 The government proffered the testimony of Louise Werts, defendant's estranged wife, at trial. Werts objected to the admissibility of her testimony under the marital confidence privilege and the doctrine of spousal immunity. Prior to trial, the district judge ordered a hearing on defendant's motion to exclude the testimony of Louise Werts. At the hearing, Louise Werts testified that she was married to Werts in 1954 and separated in 1957. From 1957 to the present, there had been no revival of the marital relationship. She had met Norris in 1964 and then lived with him consistently for twenty years. Louise Werts had three children with Werts and an additional four children that were not by Werts. Although Norris died in 1985, Louise Werts still had no revival of her relationship with her husband between 1985 and 1990. Louise Werts testified that she had never obtained a divorce from Werts because she had no plans to marry anyone else. In response to inquiry by the district court, Louise Werts indicated that she was positive that there was no possibility that she and her husband would resume their marital relationship.
 
 
 7
 After hearing the testimony, the district court "determined from her testimony ... that she wishes to do this, that she is not opposed at all to the idea of testifying, that she is doing it voluntarily." Joint Appendix at 101. The district court tentatively ruled that Louise Werts' testimony should be admitted because of a breakdown in the marital relationship, and directed the parties to provide citations to the district court. The district court ruled that Louise Werts' testimony was admissible both under the "joint participants" exception to the marital privilege and on the ground that the marriage no longer existed.
 
 
 8
 Werts was convicted on March 15, 1990, on the counts for both check-cashing schemes. He was sentence on July 17, 1990, and filed a timely notice of appeal on July 30, 1990.
 
 II.
 A.
 1.
 
 9
 Werts asserts that Louise Werts' testimony should not have been admitted because of both spousal immunity and the marital confidence privilege. Spousal immunity is a privilege that rests solely with the testifying spouse, not with the defendant. Trammel v. United States, 445 U.S. 40, 53 (1980). The Supreme Court stated in Trammel that "the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying." Id.
 
 
 10
 Werts concedes that Louise Werts' testimony would not be inadmissible under the spousal immunity privilege if she voluntarily agreed to testify. Appellant's Brief at 10. Werts' argues, however, that Louise Werts never voluntarily waived her right not to testify. We find Werts' argument unpersuasive.
 
 
 11
 We review district court findings of fact on a clearly erroneous standard of review. Fed.R.Civ.P. 52(a). We find the district court's determination that the record demonstrates that Louise Werts was willing to testify despite all of the objections to her testimony made by Werts is not clearly erroneous. See Joint Appendix at 101. Werts had told Louise Werts that because of a marital privilege, she did not need to testify in the instant case. Id. at 83. Nevertheless, Louise Werts chose to testify. Werts argues that related pending charges against Louise Werts compelled her testimony. He has been able to provide no support, however, for the proposition that the district court was clearly erroneous in determining that Louise Werts was testifying voluntarily. While the pending charges provided an incentive for her to testify, they did not make the testimony involuntary. The Supreme Court stated in Trammel that "[w]hen one spouse is willing to testify against the other in a criminal proceeding--whatever the motivation--their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony for the privilege to preserve." Trammel, 445 U.S. at 52. The Court further said that even though a spouse chose to testify after a grant of immunity and assurances of lenient treatment, those government incentives do not render the testimony involuntary. Id. at 53. Louise Werts chose to testify, knowing that it was to her advantage to do so. She could have chosen not to testify, accepting the risk of a harsher prosecution of herself. While the pending prosecution may affect the credibility a fact finder attributes to her statements, it does not make them involuntary and the judge could have found that she chose to testify truthfully. Since we find that the district judge's determination that Louise Werts testified voluntarily despite her spousal relationship with Werts is not clearly erroneous, we find that Louise Werts properly waived spousal immunity.
 
 2.
 
 12
 Werts also argues that the testimony of Louise Werts is inadmissible because it is protected by the marital confidence privilege. The marital confidence privilege applies to confidential statements privately made between parties that are married at the time of the statement. Id. at 51. This privilege, unlike spousal immunity, belongs to both parties and cannot be waived without the defendant's consent. United States v. Sims, 755 F.2d 1239, 1241 (6th Cir.), cert. denied, 473 U.S. 907 (1985). The basis for this immunity is the "preservation of the marital relationship as to outweigh the disadvantages to the administration of justice which the privilege entails." Wolfle v. United States, 291 U.S. 7, 14 (1934).
 
 
 13
 We agree with the holding of other circuits that the purpose for the marital confidence privilege is not present when a marriage is in fact terminated, even if the parties remain legally married. In such situations, the competing interest of admitting relevant evidence requires that the privilege not be applied. See United States v. Byrd, 750 F.2d 585, 592 (7th Cir.1984) (adopting categorical rule that proof of permanent separation at time of communication renders husband wife communication privilege inapplicable); see also In re Witness Before Grand Jury, 791 F.2d 234, 238-39 (2d Cir.1986) (adopting Byrd holding that the privilege does not apply to marriages in permanent separation with no possibility of reconciliation).
 
 
 14
 The district court's finding in the instant case that the marriage was irreconcilably over was not clearly erroneous. The district court held a pretrial evidentiary hearing in which Louise Werts testified that she had been separated from Werts for over thirty years, had lived with another man for twenty years during the marriage, raised a second family not fathered by Werts, and was "positive" there was no possibility of reconciliation with Werts. Joint Appendix at 75-80. While we do not declare a precise definition of what facts establish that a marriage is in fact terminated for the purpose of not applying the marital confidence privilege, it is clear that under the facts of this case the district court did not err in determining that the marriage was in fact over. The district court therefore properly held that Louise Werts could testify despite Werts' objections of marital confidence privilege.[1]
 
 B.
 
 15
 Werts asserts that it was also error to admit the statements he made to Harris and Moore. He argues that the statements were made before he was given Miranda warnings and that they were the fruits of an arrest made without probable cause. Both of these arguments depend on the conclusion that Werts was in custody at the time of the statements. Since we find that Werts was not in custody at that time, we hold that the statements were properly admitted.
 
 
 16
 Miranda warnings are only required for custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Miranda established the following test to determine custody: was the defendant's freedom of action deprived in a significant way. Id. This analysis is applied from the perspective of a reasonable person in the suspect's position. Berkemer v. McCarty, 468 U.S. 420, 442 (1984).
 
 
 17
 If the suspect is not in custody, there is no requirement that he or she be advised of his or her rights, even if he or she is a suspect. Oregon v. Mathiason, 429 U.S. 492, 495 (1977). In Beckwith v. United States, 425 U.S. 341 (1976), the Supreme Court held admissible the statements of a defendant interviewed by agents in his home because the interview was free from the coercion of custody. Id. at 342, 344-46. The Court in Orozco v. Texas, 394 U.S. 324 (1969), found that the suspect was entitled to be advised of his rights prior to questioning in his home. But in Orozco, one of the officers testified that the defendant had been arrested and was not free to leave at the time the defendant gave the incriminating statement. Id. at 325. The test is whether the suspect was in custody even where the questioning takes place in a private home. See Beckwith, 425 U.S. at 341, 342, 344-46.
 
 
 18
 Werts has provided no evidence that he was under arrest or had his freedom restrained in any manner. There is no evidence of any coercion. In fact, the officers told Werts that he did not have to answer any questions. Joint Appendix at 60. They were in plain clothes but showed identification. Id. at 61. Although they were armed, it is not alleged that weapons were ever drawn and there was no evidence to counter the inference that, since the officers were in plain clothes, their weapons were not in view. Under these circumstances, we find that the district court was not clearly erroneous in concluding that Werts was not in custody. Werts was therefore not entitled to be advised of the Miranda rights and it was not error to admit the statements made prior government advising of the rights.
 
 
 19
 Since we have concluded that Werts had not been placed in custody at the time of the challenged statements, it follows that his statements were not made under custody accomplished by illegal means. We therefore hold that the statements were not the fruits of custody accomplished without probable cause.
 
 III.
 
 20
 For the foregoing reasons, we AFFIRM the decision of the Honorable John Feikens, United States District Judge for the Eastern District of Michigan.
 
 
 
 [1]
 The government also argued that the statements were covered by the "joint participants" exception to the marital confidence privilege. This exception applies to statements that are between spouses who are joint participants in a crime and that pertain to patently illegal activity. Sims, 755 F.2d at 1243. Because we hold that the privilege did not apply because of the factual, if not legal, end of the marriage, we do not reach this issue