UNITED STATES of America,
Plaintiff-Appellee,

v.

Philip A. FRAZIER,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Noel C. JOHNSON, Defendant-Appellant.

Nos. 77–5365, 77–5366.

United States Court of Appeals,
Sixth Circuit.

Argued June 8, 1978.

Decided Oct. 3, 1978.

Rehearing Denied Dec. 6, 1978.

J. Elliott Van Dyne, Columbus, Ohio, for defendant-appellant in No. 77–5365.

G. Gary Tyack, Columbus, Ohio, for defendant-appellant in No. 77–5366.

William W. Milligan, U. S. Atty., John W. Palmer, Columbus, Ohio, for plaintiff-appellee.

Before LIVELY and KEITH, Circuit Judges, and BALLANTINE,* District Judge.

* The Honorable Thomas A. Ballantine, Jr., Judge, United States District Court for the Western District of Kentucky, sitting by designation.

LIVELY, Circuit Judge.

The defendants Frazier and Johnson were convicted at a joint jury trial of conspiracy and of transporting forged securities in interstate commerce. Their appeals were consolidated for oral argument. Among the many issues raised on appeal are the contentions of both defendants that they were denied a speedy trial and that the trial judge consistently favored the government throughout the trial and created an atmosphere in which it was impossible for them to receive a fair trial. For the reasons hereafter set out we find no merit in either of these contentions.

On March 1, 1977 the defendants were jointly indicated for violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 2314 (interstate transportation) and 18 U.S.C. § 2 (aiding and abetting). After they had pled not guilty and their case had been set for trial beginning April 11, 1971 the grand jury returned a superseding indictment on April 5, 1977. This indictment charged violation of the same statutes as the first one, but described the substantive offenses somewhat differently. The defendants again pled not guilty and trial was set for May 16, 1977. A second superseding indictment was returned on May 3, 1977, again charging violation of 18 U.S.C. §§ 371, 2314 and 2 and supplying an omission in the preceding indictment. The successive indictments each contained four counts and the substance of the charge in each count was the same in all three indictments. Trial on the second superseding indictment began on September 12, 1977. Johnson had been arrested on February 1, 1977 and Frazier on February 3rd. Both were freed on their own recognizance and remained at liberty.

Both defendants filed motions to dismiss the first and second superseding indictments on the ground that the Speedy Trial Act of 1974, 18 U.S.C. § 3161 *et seq.* (1970 Supp. V) had been violated. The district court found that provisions of the Speedy Trial Act had been violated, but that the sanctions imposed by the Act had not become effective. The court then considered whether the delay constituted a violation of the Sixth Amendment guarantee of a speedy trial. Applying the analysis prescribed in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the court found that no egregious conduct was chargeable to the government in that the reasons for the delay were "neutral." The court noted that since it violated the Act the length of the delay was presumptively prejudicial. However, the court concluded that neither defendant had shown that any real prejudice would result.

■ The district court's denial of dismissal for failure to comply with the Speedy Trial Act is in accord with this court's most recent decision on the subject. See *United States v. Lee,* 575 F.2d 1184 (6th Cir. 1978). One of the grounds of affirmance in *Lee* was the fact that "the sanction of dismissal of the indictment imposed under 18 U.S.C. § 3162(a)(2) does not take effect until July 1, 1979." At 1187. We also conclude that the district court properly disposed of the motion applying constitutional standards. Though the defendants did assert their right to a speedy trial, the complete lack of any showing of actual prejudice supports the district court's finding that constitutional rights were not violated. There is no indication of any purpose of the government to impede or hamper the preparation of a defense, or that delay in any way affected the presentation of a defense.

■ The second issue raised by both defendants relates to the conduct of the trial by the district judge. It was argued with force that Judge Kinneary displayed an obvious bias in favor of the government, creating an atmosphere in which it was impossible for the defendants to receive a fair trial. This is a serious charge, and if true, would require reversal. The evidence of bias is said to consist of interruptions of one defense attorney's opening statement, the court's "handling" of cross-examination of an unindicted co-conspirator, inviting the prosecuting attorney to object and then sustaining the suggested objections, limitation and preemption of cross-examination and "derision" of counsel.

We have read the complete transcript of this two-day trial. It reveals a judge who requires meticulous observance of local court rules and court room etiquette. It also reveals a judge who requires attorneys on both sides to frame questions properly and to refrain from testifying in the guise of asking questions. These requirements were applied to prosecution and defense alike. It can be stated from this record that Judge Kinneary is an exacting judge who sometimes shows his impatience with counsel. However, the record reveals absolutely no derision or belittlement of counsel. Where the judge interrupted one of the defense attorneys in opening statement it was only to require accuracy. After the court had corrected counsel's statement, he responded, "That's precisely what I mean. I thank the Court."

Occurrences which the defendants have described as preemption of questioning by the court, when read in context, appear only to be attempts to clarify otherwise confusing testimony by witnesses. The defendants point to the court's questioning of an unindicted co-conspirator, Brenda Agurs, as the worst example of the court's alleged interference with their conduct of the defense. This witness was rather inarticulate, and the jury easily could have been confused by her testimony. The questions asked by the court were obviously intended to clarify and did not display bias.

On the two occasions when the court invited objections by the prosecuting attorney incompetent questions had been asked or inadmissible evidence was being sought by defense counsel. The fact that the court never invited objections by the defense does not establish bias. Attorneys on both sides were given sufficient latitude, within court rules and the rules of evidence, to present the case which they had prepared.

The defendants rely most strongly on *Frantz v. United States*, 62 F.2d 737 (6th Cir. 1933); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); and *United States v. Ah Kee Eng*, 241 F.2d 157 (2d Cir. 1957), in arguing for reversal on the ground of bias. In *Frantz* and *Ah Kee*

*Eng* convictions were reversed, at least in part, because of open displays of bias by the presiding judges. Obviously we have no quarrel with the principle for which these cases stand—that a judge must be impartial. However, the opinions in both cases indicate a hostility to the defendants which is completely lacking in the conduct of the judge in the present case.

Though cited by the defendants, the opinion in *Glasser v. United States, supra,* supports our conclusion that the district judge in the present case did nothing to deny the defendants a fair trial. In *Glasser* the Supreme Court discussed the role of a federal district judge in a jury trial in the following language:

> The judge conducting a jury trial in a federal court is "not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct." *Quercia v. United States*, 289 U.S. 466, 469 [, 53 S.Ct. 698, 77 L.Ed. 1321]. Upon him rests the responsibility of striving for that atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding. Petitioners contend that the trial judge made remarks prejudicial to them, committed acts of advocacy, questioned them in a hostile manner, unduly limited cross-examination, and in general failed to maintain an impartial attitude. Various incidents in support of those contentions are brought to our attention.
>
> The court did interrogate several witnesses, but in the main such interrogation was within its power to elicit the truth by an examination of the witnesses. *United States v. Gross*, 103 F.2d 11 [(7 Cir.)]; *United States v. Breen*, 96 F.2d 782 [(2 Cir.)].
>
> \*    \*    \*    \*    \*    \*
>
> The alleged undue limitation of cross-examination merits scant attention. The extent of such examination rests in the sound discretion of the trial court. *Alford v. United States*, 282 U.S. 687 [51 S.Ct. 218, 75 L.Ed. 624]. We find no abuse of that discretion.

Perhaps the court did not attain at all times that thoroughgoing impartiality which is the ideal, but our examination of the record as a whole leads to the conclusion that the substantial rights of the petitioners were not affected. The trial was long and the incidents relied on by petitioners few. We must guard against the magnification on appeal of instances which were of little importance in their setting. Cf. *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 240 [, 60 S.Ct. 811, 84 L.Ed. 1129]; *Goldstein v. United States*, 63 F.2d 609 [(8 Cir.)]; *United States v. Warren*, 120 F.2d 211 [(2 Cir.)]. 315 U.S. at 82–83, 62 S.Ct. at 470.

In *Frantz, supra*, although the conviction was reversed, this court was careful to avoid a rule which would place federal trial judges in the role of mere umpires. Judge Hickenlooper wrote for the court—

We do not intend to hold, or even to imply, that a federal judge may not participate directly in both civil and criminal trials, or propound such questions to witnesses as seem to him essential to the proper development of the case, or express his personal opinion upon fact issues, but in so doing he should always be calmly judicial, dispassionate and impartial. He should sedulously avoid all appearance of advocacy as to those questions which are ultimately to be submitted to the jury. 62 F.2d 739.

See also, *Bartel v. Reidinger*, 338 F.2d 61 (6th Cir. 1964).

Of course, the basic requirement is one of impartiality in demeanor as well as in actions. This standard was met in the trial under review. In both preliminary and final instructions the jury was told that it should draw no conclusions from any question or comments of the judge. The prosecutor as well as defense counsel was admonished from time to time to reframe or withdraw questions. Though not mentioned in the defendants' briefs a number of defense objections were sustained, some relating to obviously harmful testimony. Upon review of the entire transcript we are convinced that the district court performed well within the standards set by this and other courts. See e. g., *United States v. Cruz*, 455 F.2d 184, 185–86 (2d Cir.), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972); *Nordmann v. National Hotel Co.*, 425 F.2d 1103, 1109 (5th Cir. 1970); *Posey v. United States*, 416 F.2d 545, 555 (5th Cir. 1969), *cert. denied*, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970).

The third issue raised by both defendants relates to the district court's refusal to permit development of their contention that the forged securities referred to in the indictment and the evidence were obligations of a foreign bank or corporation of a foreign country. The statute under which they were charged, 18 U.S.C. § 2314, does not apply to transportation of such securities. The securities in this case were cashier's checks drawn on The Chartered Bank of London. There was uncontradicted evidence that this bank was organized under the law of California and was regulated by the State Banking Commission of California. The defendants argued that since all the stock of The Chartered Bank of London was owned by a British bank § 2314 did not apply. The district court ruled as a matter of law that the statute did apply and invited defense counsel "at this time or later, or at any recess of the court, to put into the record any and all proof you wish to establish for your record in the Court of Appeals. . . ."

The record completely refutes defendants' charge that the district court deprived them of due process of law by preventing them from presenting evidence as to an element of the crime. The only evidence sought to be presented related to ownership of the shares of The Chartered Bank of London. The court ruled that even if it were conceded that the defendants would be able to prove beyond a reasonable doubt that all the shares of the bank were owned by a British company it still would not remove checks of The Chartered Bank from operation of § 2314. This was clearly a correct interpretation of the statute. The district court was not required to permit the presentation of evidence which would have no effect on its ruling of law. As shown by its invitation to proffer "any and

all proof," the district court did not deprive the defendants of an opportunity to preserve whatever evidence they had for review.

Johnson raises several additional issues. He contends that it was prejudicial error to require him to stand trial jointly with Frazier. This prejudice resulted, he argues, from the repeated admission of documentary and testimonial evidence related to activities of Frazier and the unindicted co-conspirators but which was not connected with him in any way. The jury was carefully instructed that each defendant's case must be treated individually and that determination of whether a defendant was a member of a conspiracy must be made "without regard to and independently of the acts, statements and declarations of others."

The evidence showed that three forged cashier's checks on The Chartered Bank of London were deposited at different banks in Columbus, Ohio on the same day. All three checks were for the same amount and all were ostensibly charged against an estate account in The Chartered Bank. The checks were deposited by the two unindicted co-conspirators and the defendant Johnson. The defendant Frazier was alleged to have been involved with all three checks. Both the offenses and the defendants were properly joined under Rule 8, Fed.R.Crim.P. Even when joinder is proper, however, relief from prejudicial joinder is provided for in Rule 14, Fed.R.Crim.P. upon a showing of prejudice.

This court may reverse a district court's denial of a Rule 14 motion for severance only for an abuse of discretion. *United States· v. Tarnowski,* 583 F.2d 903 (6th Cir. 1978); *United States v. Franks,* 511 F.2d 25, 30 (6th Cir.), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1975). Counsel for Johnson fully developed and argued the fact that neither of the unindicted co-conspirators even knew his client. The jury must be presumed capable of sorting out the evidence and considering the case of each defendant separately. *Franks, supra.* We find no abuse of discretion in the denial of Johnson's motion for severance.

Johnson also argues for reversal on the ground that the evidence was insufficient to support the jury's verdict. He maintains that much of the testimony of the witnesses Agurs and Grace (the unindicted co-conspirators) was inadmissible hearsay and highly prejudicial. All of the evidence connecting Johnson with Frazier and the unindicted co-conspirators was circumstantial. The strongest single fact to connect Johnson was his statement to a bank officer and an F.B.I. agent that he had received the forged check from Steve Persutti in payment of a gambling debt. This·is the same name used by Agurs and Grace, who deposited the other two forged checks, when questioned about the source. These witnesses actually received the checks from Frazier, and Persutti, if he existed, was not involved at all. Brenda Agurs further testified that she told the defendant Frazier that she had informed the F.B.I. that Steve Persutti was the source of her check. She went on to testify that Frazier later informed her that he had told the other people involved to use the name Persutti.

The fact that Johnson and two other people deposited virtually identical forged checks drawn on a California bank in three separate Columbus, Ohio banks on the same date and then all three named the same person as their source of the checks was sufficient independent evidence to connect Johnson with the conspiracy. This done, the testimony of the other two check depositors relating conversations with Frazier, though hearsay, was admissible under the co-conspirator exception to the hearsay rule. *Glasser v. United States, supra,* 315 U.S. at 74, 62 S.Ct. 457; *United States v. McManus,* 560 F.2d 747 (6th Cir. 1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 894, 54 L.Ed.2d 798; Rule 801(d)(2)(E), Federal Rules of Evidence. This evidence, all related to furtherance of the conspiracy, supplied details of the common plan and background information on the "Steve Persutti" coincidence.

Even though no witness or document connected Johnson directly with Fra-

zier the circumstantial evidence was sufficient to support an inference that Johnson was acting pursuant to an agreement with Frazier. As the Supreme Court stated in *Glasser v. United States, supra,* 315 U.S. at 80, 62 S.Ct. at 469:

Participation in a criminal conspiracy need not be proved by direct evidence; a common purpose and plan may be inferred from a "development and a collocation of circumstances." (citation omitted).

With respect to the substantive charge of violating 18 U.S.C. § 2314, the evidence was largely direct. Johnson admitted to the F.B.I. agents who questioned him that he deposited a check drawn on a California bank in his account in an Ohio bank. The evidence that the check was forged was uncontradicted. This put in motion the bank collection process which involved interstate transportation of the forged check. The only elements of the offense not proven by direct evidence were the existence of a fraudulent intent and knowledge that the checks were forged. The evidence of the Steve Persutti "cover story" was sufficient to support an inference that these elements were also present.

The judgments of the district court are affirmed.