830 F.2d 194
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony DICARLANTONIO, and John Prayso, Defendants-Appellants.
 Nos. 86-3941, 86-3942
 United States Court of Appeals, Sixth Circuit.
 September 30, 1987.
 
 Before BOYCE F. MARTIN, NATHANIAL R. JONES, and WELLFORD, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendants Anthony DiCarlantonio and John Prayso appeal from a jury verdict of guilty on two counts of conspiracy under the Hobbs Act and a substantive Hobbs Act violation, both in violation of 18 U.S.C. Sec. 1951. After the guilty verdict the defendants were given a maximum sentence by the district court. They now appeal both their convictions and the sentences imposed.
 
 
 2
 Defendant DiCarlantonio was city attorney for Steubenville and Defendant Prayso was the fire chief at the time in question. Otto Jack, an attorney, approached DiCarlantonio, on behalf of his client, Jody Glaub, a propane gas distributor, concerning prohibition of the use of propane within the Steubenville city limits. Jack reported to the Federal Bureau of Investigation that Prayso and DiCarlantonio requested money in order to change the ordinance prohibiting propane. Judge Messeo of the Jefferson County Common Pleas Court, as well as the FBI, was secretly notified about the alleged bribe solicitation. Conversations between Prayso, DiCarlantonio, Jack and Glaub were recorded by the FBI through means of a device hidden on Glaub. DiCarlantonio and Prayso accepted $15,000 each on May 28, 1986 from Glaub and at that time had initiated steps towards changing the city ordinance including speaking at a Steubenville department head meeting and contacting the city permit issuer and a Steubenville city councilman. The FBI apprehended and arrested the defendants with the cash in Prayso's socks and in DiCarlantonio's briefcase. Both defendants allege that they were conducting their own investigation of Glaub and of each other.
 
 
 3
 Defendant DiCarlantonio contends that during three days of testimony the trial judge very frequently interrupted to comment or question during examination or cross-examination of witnesses. He requests a new trial asserting prejudice and a denial of due process in that the judge's role as impartial governor of the trial was negated by these interruptions. See United States v. Hickman, 592 F.2d 931, 933-34 (6th Cir. 1979).
 
 
 4
 Defendant Prayso also calls our attention to previous occasions where this court has reviewed the manner of Judge Kinneary's trial participation and claims that this demonstrates that the judge has a pattern of excessive interruptions. See United States v. Tilton, 714 F.2d 642 (6th Cir. 1983) and United States v. Frazier, 584 F.2d 790 (6th Cir. 1978). Prayso contends that the judge's comments conveyed his belief to the jury that defendants were guilty.
 
 
 5
 The record shows that Judge Kinneary questioned both sides often, normally for the clarification of times, dates and locations; to request that a witness repeat an inaudible answer; and to ask routine questions, but he also pursued other inquiries. It is the duty of the trial judge in many instances to clarify the testimony of witnesses and bring out the true facts of the case. See United States v. Davis, 546 F.2d 617, 622 (5th Cir. 1977); United States v. Gunter, 631 F.2d 583 (8th Cir. 1980); United States v. Singer, 687 F.2d 1135, 1141 (8th Cir. 1982); United States v. Frazier, 584 F.2d 790, 793 (6th Cir. 1978). He should, at the same time, avoid excessive intervention. We note that defense counsel never objected to the court's questioning during the trial.
 
 
 6
 In an attempt to rectify any possible prejudice resulting from the many interruptions by his questions, Judge Kinneary instructed the jury:
 
 
 7
 Ladies and gentlemen, during the course of this trial the Court has had occasion to ask questions of some of the witnesses. The judge has the right, and indeed the duty, to see that facts are clearly presented. My purpose in asking questions was to clarify certain matters in the case. Again--and I emphasize this as strongly as I know how--you are not to draw any conclusion that by my interrogation of any witness, I have intended to convey any point of view as to the witness's credibility or whether the defendant is guilty or not guilty of the charges on which he is being tried.
 
 
 8
 Despite this effort, we reluctantly conclude that defendants may in this instance have been denied a fair trial by the numerous interruptions by the judge during the trial. There were several hundred such interruptions in this case, including several comments by the trial court that are troubling to us. While these interruptions alone would not be sufficient to bring about a reversal, we believe that this excessive number of interruptions, and the nature of some of them, in addition to the other trial errors discussed herein likely did prejudice the defendants. It is, of course, the duty of defendant's counsel to make a specific objection on the rare occasion that a judge is guilty of excessive intervention in a trial. We recognize the difficulty and sensitivity, however, involved in this type of objection where counsel may frequently appear before that judge.
 
 
 9
 We find prejudice in this case in questioning by the government of two of defendant DiCarlantonio's character witnesses about an alleged private investigation of DiCarlantonio by the Ohio Supreme Court for unethical and unlawful conduct as an attorney. The alleged conduct had nothing to do with the charges in this case. If considered alone, this questioning might constitute harmless error due to the fact that the precise subject matter of the investigation was never revealed and also because one character witness testified that defendant was cleared in the investigation, but this error under Fed. R. Evid. 404, coupled with other trial errors, warrants a new trial in our judgment.
 
 
 10
 Defendant Prayso contends that numerous off-the-record side bar conferences were prejudicial because they impeded his ability to appeal effectively from alleged irregularities in these conferences due to the lack of a record. The record shows that more than twenty bench conferences were conducted off-the-record which concerned, among other things, limitations of questioning by defense counsel and other objections made. We find this practice to violate 28 U.S.C. Sec. 753. See also United States v. Gallo, 763 F.2d 1504, 1529 (6th Cir. 1985), cert. denied, 106 S. Ct. 1200 (1986). Even if, as the government asserts, defense counsel was given the opportunity to place any objection or proffer on the record during the next recess, we cannot condone such a practice.
 
 
 11
 In Gallo, we held that prejudice can occur with off-the-record discussions, but added that a 'court's offer to counsel to record objections following an 'off-the-record' discussion lessens the risk of prejudice and reversal.' 763 F.2d at 1531. Also, we indicated that a defendant's personal consent or a waiver of claim of error in not recording all proceedings may preclude claims of reversible error. We do not read Gallo, however, to condone the regular practice of such off-the-record side-bar conferences. Indeed, requiring counsel to await the next recess to record his objections to the particulars of the last side-bar conference may well be prejudicial in that counsel may not recall exactly what was said during the conference or the exact nature of the error committed. Pressures of a heated criminal trial are not conducive to protecting defendant's rights under this procedure. Trial counsel may completely forego the opportunity to record defendant's objections or unknowingly omit an objection or specific discussion that would be pertinent to his client's rights on appeal. Taking into account each of these irregularities and errors, we conclude unhappily that a new trial is necessary to obviate possible prejudice which may have occurred despite the lack of particular objection as to some of the erroneous proceedings.
 
 
 12
 We find no merit in the other alleged errors asserted by defendants. We therefore REVERSE and REMAND this case for a new trial.