848 F.2d 194
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mary L. JUNIOUS, Defendant-Appellant.
 No. 87-3904.
 United States Court of Appeals, Sixth Circuit.
 May 26, 1988.
 
 Before: KRUPANSKY and BOGGS, Circuit Judges, BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Mary L. Junious (Junious) appeals from her jury conviction of three counts of mail fraud in violation of 18 U.S.C. sections 1341 and 2, and one count of conspiracy to commit mail fraud in violation of 18 U.S.C. section 371. Junious argues that she was deprived of a fair trial when the trial judge interrupted and limited defense counsel's opening statement. Junious also argues that the evidence was insufficient to sustain a conviction for conspiracy. We find no deprivation of a fair trial, and we find sufficient evidence to sustain the conspiracy conviction. Accordingly, we AFFIRM.
 
 
 2
 Junious was indicted on three counts of mail fraud and one count of conspiracy to commit mail fraud, and a jury found her guilty on all four counts. At trial, the government's primary witness was Gloria Holton,[1] who testified that Junious asked her to accept packages for Junious at Holton's address in Ohio and forward them to Junious in Rochester, New York. Holton agreed, and packages from various catalog companies addressed to different names began arriving at Holton's home. Holton signed for the packages using the name that appeared on the address. Junious sent Holton the money to cover the expense of shipping the packages to Rochester. In addition, Junious gave money and gifts to Holton for her efforts.
 
 
 3
 Holton further testified that Junious explained to her that she was using the credit card numbers of Eastman Kodak employees to order merchandise through catalog companies under assumed names. Junious had access to the numbers as a secretary at Kodak. Holton began to order merchandise for herself using the same method. Holton also testified that Junious supplied her with about ten credit card numbers, and Holton supplied Junious with two.
 
 
 4
 Junious called Holton to inform her that the postal inspectors were investigating Junious. Under Junious's instructions, Holton told the inspectors that she did not know what they were talking about. On cross-examination, Holton testified that she and Junious never agreed or understood that they were going to commit fraud through use of the United States mail, and that she never knew or thought that she was committing a federal crime.
 
 
 5
 Other evidence at trial included the testimony by representatives of several of the companies from which Junious and Holton had ordered merchandise. Also, several of the Kodak employees testified that their credit cards were used by unknown, unauthorized persons. A representative from Kodak security testified that Junious had access to the expense account records of Kodak employees and that these records included credit card receipts.
 
 
 6
 Finally, a postal inspector testified that a search of Junious's home yielded several catalogs addressed to different names at Junious's address, boxed merchandise, empty boxes from mail order companies, and address labels. Another inspector testified that Junious's fingerprints were found on order forms, and a document analyst opined that Junious's handwriting was on several order forms.
 
 
 7
 Prior to the opening statements, the court instructed the jury that the purpose of the opening statements is for each side to state what evidence it intends to present. The court also instructed the jury that an opening statement is not evidence and that it is not an opportunity to present an argument. In his opening statement, defense counsel began to reiterate these instructions. The court interrupted him and told him to tell the jury what evidence he was going to present. Defense counsel then stated that he was "trying to diffuse some of the statements that the government intends to prove." The court reminded defense counsel that argument was not the purpose of opening statements and again asked him to tell the jury about his evidence. Defense counsel did not outline any intended offer of evidence, but ended his opening statement.
 
 
 8
 Junious requests that this court reverse the conspiracy conviction and reverse and remand the mail fraud counts for retrial. In the alternative, Junious requests that the convictions be reversed and remanded for new trial.
 
 
 9
 First, Junious argues that by interrupting defense counsel's opening statement, the district judge "conveyed to the jury the idea that there was to be no defense in the case. His remarks had the effect of telling the jury to ignore the defense's cross-examination of the government's witnesses, thereby eliminating an effective defense." Brief for Junious at 6. There is absolutely no basis for this contention. It is well established that opening statement is not a proper time for argument. See United States v. Dinitz, 424 U.S. 600, 612 (Burger, C.J., concurring). What Junious describes as a prejudicial outburst from the court was a proper exercise of the judge's supervisory responsibility and not an abuse of discretion. See United States v. Roberts, 618 F.2d 530 (9th Cir.1980) (trial judge is more than referee; role of judge is to keep errors to a minimum and prevent deviation from proper presentation).
 
 
 10
 This case can be easily distinguished from those in which interjection by the trial judge required reversal and remand for new trial. In United States v. Hickman, 592 F.2d 931 (6th Cir.1979), the judge interjected himself into the proceedings over 250 times and limited cross-examination, took over the government's redirect examination, sustained objections that were never made, and exhibited an anti-defendant attitude. In United States v. Kermit Frazier, Jr., 580 F.2d 229 (6th Cir.1978), the trial court interrupted defense counsel's opening statement, effectively demanded that counsel certify his client's innocence, and then accused counsel of dodging his questions. The facts of this case fall far short of such an abuse. Rather, this case more closely resembles that of United States v. Philip A. Frazier, 584 F.2d 790 (6th Cir.1978), in which this court found that "the record reveals absolutely no derision or belittlement of counsel. Where the judge interrupted one of the defense attorneys in opening statement it was only to require accuracy." 584 F.2d at 793. Therefore, we determine that the trial judge did not abuse his discretion and find no basis for reversal or remand for retrial due to the judge's interjection in defense counsel's opening statement.
 
 
 11
 Second, Junious argues that reversal of the conspiracy conviction is necessary because Holton's testimony did not establish beyond a reasonable doubt that an agreement to commit an unlawful act existed between Holton and Junious. A formal agreement between Holton and Junious, however, is not necessary to prove their conspiracy to violate federal law. United States v. Bavers, 787 F.2d 1022 (6th Cir.1985). Moreover, Junious's involvement in a conspiracy need not be shown by direct evidence, but can be inferred from circumstances. Glasser v. United States, 315 U.S. 60, 80 (1942).
 
 
 12
 This court must sustain a jury verdict if, viewed in the light most favorable to the government, there is substantial evidence on the record to support the verdict. Glasser v. United States, 315 U.S. 60, 80 (1942). We find substantial evidence to show that Holton and Junious came to an understanding as to a scheme to use others' credit card numbers and ficticious names to order and receive merchandise through the mail fraudulently. Holton agreed to Junious's request to accept merchandise for her under different names. Junious told Holton of the scheme and suggested that Holton also order merchandise in this way. The two women exchanged the credit card numbers of other persons and Holton lied to the postal inspectors at the request of Junious. Therefore, the conspiracy conviction is affirmed.
 
 
 13
 Based on the foregoing, we AFFIRM the jury's conviction of Junious on all four counts of mail fraud and conspiracy.
 
 
 
 [1]
 Holton agreed to plead guilty to one count of mail fraud and to testify against Junious as part of a plea bargain