946 F.2d 896
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raleigh Mitchell WALTON, Defendant-Appellant.
 No. 91-5064.
 United States Court of Appeals, Sixth Circuit.
 Oct. 17, 1991.
 
 Before KENNEDY and DAVID A. NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Raleigh Mitchell Walton appeals his conviction for tax evasion in violation of 26 U.S.C. § 7201 and for failure to file a return under 26 U.S.C. § 7203, contesting that he did not knowingly waive his right to counsel, that the judge's bias tainted the trial court proceeding, and that evidence was improperly admitted against him.
 
 I.
 
 2
 Defendant-appellant Raleigh Mitchell Walton was a self-educated consulting engineer who rendered his services as a specialist to various corporations and businesses. He had been working, paying taxes and filing tax returns from approximately 1960 through 1974, when he stopped filing returns. Mr. Walton stopped filing returns because, according to his interpretation of the Internal Revenue Code and his system of accounting, he had no income. The government countered that Walton failed to file income tax returns, even though he had earned income. The government also alleged that Walton fraudulently filed W-4 forms indicating that he was tax exempt when he knew that he was subject to taxation. Finally, it was alleged that, in 1985 and 1986, he continued to avoid his tax obligations by operating as an independent contractor.
 
 
 3
 Walton was originally indicted on three counts of income tax evasion on February 14, 1990. The trial began on July 2, 1990 before Judge Bertelsman in the Eastern District of Kentucky. At all times during this proceeding, Walton was represented by counsel, F. Dennis Alerding. On July 6, 1990 the jury advised the court that it could not reach a verdict, and a mistrial was declared.
 
 
 4
 The matter was then reassigned to Judge Joseph M. Hood and Walton's counsel, Alerding, requested leave to withdraw as counsel of record. This was motivated by Walton's desire to represent himself, and by the perceived lack of ability to communicate between the attorney and client at the earlier trial.
 
 
 5
 A superseding indictment was returned on August 8, 1990 restating the original counts and adding three counts of failure to file tax returns in violation of 26 U.S.C. § 7203. On August 13, 1990 a pre-trial conference was held at which time Alerding's motion to withdraw was granted. At the same time, the court questioned Walton as to his ability to represent himself, and to whether he truly understood the implications of waiving his right to counsel. Walton stated that he understood the judge's admonitions and that he wanted to represent himself. On September 24, 1990 a second pre-trial conference was held, at which time the defendant was again questioned as to his earlier request to waive the right to counsel and to represent himself. The court granted Walton's request, but appointed Andrew M. Stein as "stand-by" counsel to assist Walton.
 
 
 6
 Trial commenced on October 29, 1990, presided over by Judge Joseph Hood. The government presented five witnesses in its case-in-chief, and the defendant did not challenge the testimony of the first four witnesses. However, Walton challenged the government's ability to call his former spouse as a witness against him, claiming that such testimony should be excluded pursuant to the spousal privilege. Nevertheless, the court allowed the testimony into evidence over the defendant's objection.
 
 
 7
 The only witness for the defense was the defendant, Walton. He began his testimony by reading from a prepared "brief" which purported to explain the tax laws of the United States from the perspective of constitutional history and from the viewpoints of various great men in the history of the western world. The court ruled that such testimony was relevant to the defendant's state of mind. Walton then began to present to the jury the legal basis for the federal government's taxing power. In response, the court called a bench conference to warn Mr. Walton that he could not instruct the jury on the law of the case. Nevertheless, Walton continued to read sections of the Constitution to the jury and the court called another bench conference. Upset by Walton's failure to follow the court's instructions, the judge sent the jury out of the courtroom and again warned Walton that he was not to invade the court's province by instructing the jury as to the proper rules of law, and called a short recess so that Walton could discuss this matter with standby counsel, Stern.
 
 
 8
 When the trial resumed, Walton moved for a mistrial based upon his mistaken understanding that he could proceed as he had at his previous trial. The court denied the motion, stating that Walton had been warned at the outset not to waive counsel, and that he must proceed as planned with the aid of standby counsel. The court tried to assist Walton, telling him what he should explain to the jury, and what was prohibited. Walton proceeded to explain why he believed he was entitled to the deductions that he took, and his system of accounting used to arrive at these figures. This testimony was unobjectionable and the court allowed him to conduct his case without interruption.
 
 
 9
 Based on the evidence, a guilty verdict was returned on all six counts on October 31, 1990. Defendant was sentenced, on December 17, 1990, to forty-eight months each on counts one through three to run concurrently to each other, and 12 months each on counts four through six to run concurrently to each other and consecutively to counts one through three for a total of sixty months. Walton then filed a timely notice of appeal on December 26, 1990.
 
 II.
 
 10
 Appellant first contends that the district court abused its discretion in denying his motion for mistrial because appellant did not knowingly and intelligently waive his right to counsel. For the following reasons, we disagree.
 
 
 11
 The Supreme Court's decision in Faretta v. California, 422 U.S. 806 (1975) clearly established that the sixth amendment "grants to the accused personally the right to make his defense" through self-representation. Id. at 819; United States v. Miller, 910 F.2d 1321, 1324 (6th Cir.1990), cert. denied, 111 S.Ct. 980 (1991). "Self-representation, however, must be undertaken only upon a showing that an accused was offered counsel but intelligently and understandingly rejected the offer." Miller, 910 F.2d at 1324; United States v. Grosshans, 821 F.2d 1247, 1250 (6th Cir.), cert. denied, 484 U.S. 987 (1987).
 
 
 12
 This circuit has recognized that a trial judge is put in a difficult position: "An over protective judge who refuses to allow a defendant to jeopardize his own defense may be reversed, and a judge who does not make a copious inquiry into the thought processes of the accused ... is subject to an appeal." United States v. McDowell, 814 F.2d 245, 248-49 (6th Cir.), cert. denied, 484 U.S. 980 (1987). To assist the judge, the Sixth Circuit has adopted the Model Inquiry set forth in 1 Bench Book for United States District Judges 1.02-2 (3d ed. 1986) which outlines a battery of questions which must be asked by the judge in reaching the conclusion that counsel has been knowingly waived. McDowell, 814 F.2d at 250. To further safeguard a defendant's right to counsel, McDowell requires that the judge make a "finding on the record of informed insistence upon self-representation as [a precondition] to a valid waiver of the right to counsel." Miller, 910 F.2d at 1324; see also McDowell, 814 F.2d at 250. The trial court need only substantially comply with the guidelines, there need not be literal adherence. Miller, 910 F.2d at 1324; McDowell, 814 F.2d at 250.
 
 
 13
 In determining whether a mistrial should have been granted, we review the district court's denial under the abuse of discretion standard. United States v. Cardell, 924 F.2d 614, 617 (6th Cir.1991); United States v. Levy, 904 F.2d 1026, 1030 (6th Cir.1990), cert. denied, 111 S.Ct. 974 (1991). In the instant case, whether or not Walton properly waived his right to counsel, thereby forfeiting his later right to rely on denial of counsel as a basis for a mistrial, depends upon whether Walton knew what he was doing and that his choice was "made with eyes open." Faretta, 422 U.S. at 835.
 
 
 14
 As the record in this case amply demonstrates, the district court strictly complied with the Model Inquiry mandated by McDowell. It is clear that Walton--who had a high school education and was self-taught beyond his years of formal education--understood his decision. Therefore, we do not believe that Walton has a basis for arguing that he did not knowingly and intelligently waive his right to be represented by counsel.
 
 III.
 
 15
 Appellant next contends that the district court judge demonstrated bias and prejudice against him at trial thereby tainting the proceeding and depriving him of a fair trial. We do not believe that these allegations of bias are borne out by the record.
 
 
 16
 It is manifest that "[a] fair trial in a fair tribunal is a basic requirement of due process. Fairness, of course, requires an absence of actual bias in the trial of cases." In re Murchison, 349 U.S. 133, 136 (1955); Anderson v. Sheppard, 856 F.2d 741, 745 (6th Cir.1988). In this regard, the trial judge should exercise self-restraint and preserve an atmosphere of impartiality. When the remarks of the judge clearly indicate a hostility to one of the parties, or an unwarranted prejudgment of the merits of the case, or an alignment with one of the parties, the judge indicates a personal bias and prejudice which renders invalid any resulting judgment. Anderson, 856 F.2d at 745; Knapp v. Kinsey, 232 F.2d 458, 465-67 (6th Cir.), cert. denied, 352 U.S. 892 (1956).
 
 
 17
 Although the trial judge is "not a mere moderator, but is the governor of the trial," United States v. Frazier, 584 F.2d 790, 793 (6th Cir.1978), quoting Quercia v. United States, 289 U.S. 466, 469 (1933), a trial judge must exercise care when interjecting himself into the trial for fear that he may overstep his bounds. See Slone, 833 F.2d at 597. The court, in Hickman, identified three factors which determine whether the judge properly participated in the activities of trial. First, in a lengthy, complex trial, judicial intervention is often necessary for clarification. Hickman, 592 F.2d at 933; Sloan, 833 F.2d at 597; United States v. Smith, 561 F.2d 8, 13-14 (6th Cir.), cert. denied, 434 U.S. 958 (1977). Second, if the attorneys in a case are unprepared or obstreperous or if the facts are becoming muddled and neither side is able to clear them up, judicial intervention may be necessary for clarification. Hickman, 592 F.2d at 933; Slone, 833 F.2d at 597; Frazier, 584 F.2d at 793 (judicial involvement permissible where counsel incompetent). Third, if a witness is difficult or presents confusing testimony, judicial intervention is appropriate to clear up any confusion. Hickman, 592 F.2d at 933; Slone, 833 F.2d at 597. Absent any of these factors, judicial intervention is not warranted. Hickman, 592 F.2d at 933.
 
 
 18
 In the instant case, appellant argues that the trial judge's "statements, comments and confrontations" directed at him had a negative effect on the jury's perception of the case. We find that the record does not support Walton's contentions. In the main, the trial judge's intervention was necessitated by appellant's unfamiliarity with the rules of procedure, and his continued attempts to testify about the law. Under these circumstances, we believe that the trial judge was even-handed in his courtroom conduct, and that his actions were not clearly erroneous. See United States v. Hatchett, 918 F.2d 631, 640 (6th Cir.1990) (witnesses are not permitted to testify about the law because the judge's special legal knowledge is presumed sufficient), cert. denied, 111 S.Ct. 2839 (1991). If there were minor defects, we find that they were cured by the trial judge's instruction to the jury that they were not to read anything he had done to indicate his feelings about the case. Slone, 833 F.2d at 601.
 
 IV.
 
 19
 Finally, appellant argues that the district court abused its discretion by allowing Walton's former spouse to testify against him at trial.
 
 
 20
 There are two types of marital privilege. The first is the privilege against adverse spousal testimony. This privilege protects a defendant from adverse testimony by the defendant's spouse. There are two requirements which must exist in order to invoke this privilege. First, the privilege can only be asserted during a valid marriage. United States v. Byrd, 750 F.2d 585, 590 (7th Cir.1984); United States v. Lustig, 555 F.2d 737, 747 (9th Cir.1977), cert. denied, 434 U.S. 1045 (1978). See also Trammel v. United States, 445 U.S. 40, 46 (1979) (privilege bars testimony of one spouse against the other spouse in order to avoid destruction of an existing marital relationship). Secondly, in the federal courts, the privilege may only be claimed by the testifying witness-spouse not by the defendant-spouse. Trammel, 445 U.S. at 53. See United States v. Sims, 755 F.2d 1239, 1240 (6th Cir.), cert. denied, 473 U.S. 907 (1985). Under this privilege, "the witness may neither be compelled to testify nor foreclosed from testifying." Sims, 755 F.2d at 1240.
 
 
 21
 Since Walton was no longer married to his spouse at the time of trial, the privilege against adverse spousal testimony does not apply. Additionally, Walton, as the defendant, has no right to invoke this privilege; rather, it belongs solely to the witness, who was permitted to testify over Walton's objection. See Sims, 755 F.2d at 1240. The trial judge did not abuse his discretion by admitting the testimony over claims of adverse spousal privilege.
 
 
 22
 The second marital privilege is the protection given to confidential marital communications. This privilege protects information privately communicated between a husband and wife in the confidence of a valid marital relationship. Trammel, 445 U.S. at 51; Blau v. United States, 340 U.S. 332 (1951). Unlike the privilege against adverse spousal testimony, the defendant retains the privilege and can invoke it to foreclose testimony regarding confidential marital communications. Sims, 755 F.2d at 1241. This privilege only protects those communications made between spouses during the existence of a marital relationship, Byrd, 750 F.2d at 590, but the privilege can be invoked as to those communications even after the marriage has disintegrated. Id. at 591. Finally, this privilege "applies only to conduct and expressions intended to be a communication." United States v. Robinson, 763 F.2d 778, 783 (6th Cir.1985). See, e.g., Pereira v. United States, 347 U.S. 1, 6 (1954).
 
 
 23
 In the case at bar, Walton clearly had the right to invoke this privilege to challenge some of the testimony of his former spouse, but whether the privilege should have kept the testimony out depends on how the testimony is to be characterized.
 
 
 24
 According to Robinson, only those expressions intended as a communication are protected by the privilege. In this case, the witness ("Carol Walton") testified as to the following: (1) biographical information, including name, address, employment, and date of marriage; (2) facts concerning their divorce, including relevant dates; (3) that she would give all her records to the appellant, and that she never filed a tax return herself; instead she assumed that appellant filed the tax returns; (4) that she never received a refund check, and never signed a tax return; (5) that she learned from the IRS in December 1983 that appellant had not filed tax returns for 5 or 6 years; and (6) with the assistance of the IRS, she filed returns individually for the years that appellant avoided filing. Trial Transcript at 232-37. This testimony does not evidence communications made between the spouses in reliance on the confidentiality of their marriage. Instead, the testimony merely related to objective facts which were not communicative in nature. See Robinson, 763 F.2d at 783. Therefore, we hold that the district court did not abuse its discretion in permitting Carol Walton to testify as to these acts.
 
 
 25
 However, Carol Walton also testified that every year around tax time she would ask appellant whether he was going to file a return, to which he would reply "don't worry about it, I'll take care of it." Trial Transcript at 235. The government argues that this statement should be admissible because "statements made by one spouse to the other in furtherance of a criminal act do not rise to the level of a confidential communication." Appellee's Brief at 27. However, the government cites no precedent to support this reasoning, nor were we able to uncover any case law which would create such a broad exception to the privilege. This circuit has adopted a "joint participants exception" to the privilege for confidential marital communications. This exception eliminates the privilege where spouses engage in conversations regarding joint, ongoing or future, patently illegal activity. Sims, 755 F.2d at 1243. However, neither Sims, nor any of the circuit court decisions upon which it relied, have held that statements made in furtherance of criminal activity between spouses are admissible where only one spouse is engaged in the crime. See United States v. Broome, 732 F.2d 363 (4th Cir.), cert. denied, 469 U.S. 855 (1984); United States v. Ammar, 714 F.2d 238 (3d Cir.), cert. denied, 464 U.S. 936 (1983); United States v. Mendoza, 574 F.2d 1373 (5th Cir.), cert. denied, 439 U.S. 988 (1978); United States v. VanDrunen, 501 F.2d 1393 (7th Cir.), cert. denied, 419 U.S. 1091 (1974). Here, Carol Walton was not a co-defendant or co-conspirator, and so this testimony should be excluded under the logic of Sims. Furthermore, even if the Sims co-conspirator theory could apply here, that case only permits an exception to the privilege for statements which are unlawful on their face. Sims, 755 F.2d at 1243. The statement by Walton "don't worry, I'll take care of it" is not the type of assertion comprehended by Sims, as illegality could only be implied from his words.
 
 
 26
 Finally, Carol Walton, presented testimony in response to the government's direct examination as follows:
 
 
 27
 Q. When you spoke to [the IRS] in December of 1984 did [they] ask you to tell the defendant that [they were] looking for him?
 
 
 28
 A. Yes.
 
 
 29
 Q. Did you do that?
 
 
 30
 A. At some time later. I didn't see him for several weeks but I did tell him. When I saw him we were in mediation and I told him that they were looking for him.
 
 
 31
 Q. What was his response when you told him that?
 
 
 32
 A. I really can't remember as far as response. I don't know. I guess he was maybe a little surprised or--I really don't know.
 
 
 33
 Transcript at 236-37.
 
 
 34
 We find that these were not privately disclosed communications made confidentially in reliance on the marriage relationship. See Trammel, 445 U.S. at 51; Blau, 340 U.S. 322 and Byrd, 750 F.2d at 590. Instead, they were made at the request of a third person. Furthermore, Walton's response to the message--that he looked "a little surprised," was not a communicative act which warrants protection under the privilege.
 
 
 35
 Therefore, we believe that all of Carol Walton's testimony should have been admitted, except for the statement made by appellant that "he would take care of it." This testimony should have been excluded as a confidential marital communication outside of any exception. However, given the overwhelming evidence against Walton, we find that the trial judge's error in allowing this testimony into evidence was harmless and is not grounds for reversal. Fed.R.Crim.P. 52(a).
 
 V.
 
 36
 For the foregoing reasons, we AFFIRM the decision of the district court.
 
 
 37
 DAVID A. NELSON, Circuit Judge, concurring.
 
 
 38
 I concur in the judgment and in all of the opinion except for the portion dealing with the admissibility of Carol Walton's testimony that her husband told her he would "take care of" the filing of joint tax returns. The Court of Appeals for the Seventh Circuit has held that the confidential marital communications privilege does not apply in the case of a spouse who is a victim of the defendant's misconduct. See United States v. Van Drunen, 501 F.2d 1393, 1396-97 (7th Cir.1974). I agree with the Seventh Circuit--and as a victim of her husband's misconduct, Carol Walton was entitled, I believe, to give the testimony in question.