UNITED STATES of America,
Plaintiff-Appellee,

v.

Daniel B. SIMS, Defendant-Appellant.

No. 82–1523.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 25, 1984.

Decided Feb. 28, 1985.

Edward F. Marek, Federal Public Defender, Michael G. Dane, argued, Cleveland, Ohio, for defendant-appellant.

John A. Smietanka, U.S. Atty., Donald Daniels, Martin Palus, argued, Asst. U.S. Attys., Grand Rapids, Mich., for plaintiff-appellee.

Before JONES and CONTIE, Circuit Judges, and JOHNSTONE, District Judge.*

NATHANIEL R. JONES, Circuit Judge.

Daniel B. Sims appeals from his convictions after a trial to the bench on thirteen counts of mail fraud in violation of 18

---

* Honorable Edward H. Johnstone, United States District Judge for the Western District of Kentucky, sitting by designation.

U.S.C. § 1341. This appeal presents the issue of whether an exception to the confidential marital communications privilege should be adopted for confidential spousal communications arising out of joint criminal activity. We find that the district court properly applied such an exception; and, finding no other error, we affirm.

## I.

Both Sims and his wife, Denise Sims participated in a scheme to defraud insurance companies through use of the mails. The couple submitted insurance claims for deliberately set fires that damaged their home and place of business, for staged burglaries, for staged automobile accidents, and for non-existent personal injuries.

Denise Sims testified under the Federal Witness Protection Plan and in exchange for the dismissal of the charges that had been brought against her in the joint indictment under which appellant was being tried. Defendant had previously objected to her testimony insofar as it would relate to confidential marital communications. In ruling on this objection, the district court stated:

> the Supreme Court of the United States, in *Trammel*, ... implied at the very minimum that confidential communications do not occur when a husband and wife plan a crime. That is not a confidential marital communication. That is merely one criminal talking to another criminal, or potential criminal talking to another criminal. To hold otherwise would be to frustrate the administration of justice without a good legal reason to do so. That is to say, the protection of the marital relationship, and the ability of one spouse to communicate privately with the other.
>
> Consequently, my ruling is that, there being no doubt about the adverse portion, because counsel for both sides agree on that, my ruling is that testimony from this witness that is about to appear that relates to the planning of a crime, or the discussion of joint crimes

between husband and wife, is not such a conversation as falls within the marital communication privilege.

During the course of her testimony, Denise Sims testified to the content of verbal statements made by appellant solely in Denise Sims' presence about the crimes in question. Appellant challenges the admission of this testimony.

## II.

█ There are two types of marital privilege. One privilege is the privilege against adverse spousal testimony. In *Trammel v. United States*, 445 U.S. 40, 53, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980), the Supreme Court held that under the privilege against adverse spousal testimony, "the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying." The defendant in *Trammel* attempted to prevent introduction of his wife's testimony as to her role and defendant's role in a heroin distribution conspiracy. He argued that he had a privilege against all adverse spousal testimony. *Id.* at 42–43, 100 S.Ct. at 908. The Court found that the original concept underlying the common law privilege against adverse spousal testimony has no relevance today. The original concept was that because a defendant was not permitted to testify against himself and because husband and wife were one legal entity, it followed that the wife was not permitted to testify against the husband. *Id.* at 44, 100 S.Ct. at 909. The Court recognized that women are no longer regarded as chattels or denied separate legal identities. *Id.* at 52, 100 S.Ct. at 913. The modern justification for the privilege is "its perceived role in fostering the harmony and sanctity of the marriage relationship." *Id.* at 44, 100 S.Ct. at 909. The Court found that the modern justification is unpersuasive when one spouse is willing to testify against the other. *Id.* at 52, 100 S.Ct. at 913. The Court concluded that the privilege vests only in the testifying spouse, noting that this holding would further "the important public interest in marital harmony without

unduly burdening legitimate law enforcement needs." *Id.* at 53, 100 S.Ct. at 914.

Another privilege is that which protects confidential marital communications. It is this latter privilege that defendant in the instant case attempts to assert. The Court in *Trammel* specifically noted that this privilege regarding *confidential* marital communications was distinct from the privilege against adverse spousal testimony, which was not present in that case. It observed that the holdings of *Wolfle v. United States,* 291 U.S. 7, 14, 54 S.Ct. 279, 280, 78 L.Ed. 617 (1934) and *Blau v. United States,* 340 U.S. 332, 333–34, 71 S.Ct. 301, 302, 95 L.Ed. 306 (1951) (confidential marital communications are privileged), remained valid. *Id.* at 45 n. 5, 51, 100 S.Ct. at 909 n. 5, 912. Consequently, although the privilege against adverse spousal testimony vests in the witness, the defendant retains the privilege to foreclose testimony regarding confidential marital communications under *Blau* and *Wolfle. See United States v. Klayer,* 707 F.2d 892, 894 (6th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 180, 78 L.Ed.2d 161 (1983).

A number of circuits have developed a "joint participants" exception that has been applied to one or both of the marital privileges. *See United States v. Broome,* 732 F.2d 363 (4th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 181, 83 L.Ed.2d 116 (1984); *United States v. Ammar,* 714 F.2d 238 (3d Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); *United States v. Mendoza,* 574 F.2d 1373 (5th Cir.), *cert. denied,* 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978); *United States v. Van Drunen,* 501 F.2d 1393 (7th Cir.), *cert. denied,* 419 U.S. 1091, 95 S.Ct. 684, 42 L.Ed.2d 684 (1974). Under this exception, confidential marital communications are not protected if they pertain to joint criminal activity of the spouses. The government in the instant case argues that this exception should be applied to this case because the testimony in question concerned only those confidential marital communications regarding joint criminal activity.

The Seventh Circuit was the first circuit to recognize expressly the joint participants exception. It did so in *United States v. Van Drunen,* 501 F.2d 1393, 1396–97 (7th Cir.), *cert. denied,* 419 U.S. 1091, 95 S.Ct. 684, 42 L.Ed.2d 684 (1974). *See United States v. Clark,* 712 F.2d 299, 300–01 (7th Cir.1983). *Van Drunen* set forth two rationales for its holding that the marital privilege against adverse spousal testimony does not apply if the witness spouse is a victim or a participant. First, the court reasoned that the goals of protecting marital privacy and of encouraging frank marital communications do "not justify assuring a criminal that he can enlist the aid of his spouse in a criminal enterprise without fear that by recruiting an accomplice or co-conspirator he is creating another potential witness." 501 F.2d at 1396. Second, the court opined that the rehabilitative effect that the marriage may have on the defendant spouse is diminished when spouses are joint participants in a crime. *Id.* at 1397.

In expressly adopting the joint participants exception, the *Van Drunen* court applied the exception to the privilege against adverse spousal testimony. *See also United States v. Clark,* 712 F.2d 299, 300–01 (7th Cir.1983). The reasoning of the joint participants exception, however, had previously been applied by the Seventh Circuit to the confidential marital communications privilege. *See United States v. Kahn,* 471 F.2d 191, 194–95 (7th Cir.1972), *rev'd on other grounds,* 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974). The court in *Kahn* held that confidential communications between spouses regarding criminal activity were not within the privilege and, consequently, held that the trial court had improperly suppressed tapes of the Kahns' conversations about violations of state gambling laws. The court reasoned that the public's interest in discovering the truth about criminal activity outweighed the public's interest in protecting the privacy of marriage where the conversations in question related directly to criminal activity. *See id.* at 194–95.

The Seventh Circuit has recently reaffirmed its adoption of the joint participants exception as applied to the privilege against adverse spousal testimony. *See United States v. Clark*, 712 F.2d 299, 300–01 (7th Cir.1983). *Clark* affirmed the district court's ruling that a witness spouse may be held in criminal contempt for refusing to testify against his wife. Although *Clark* involved the privilege against adverse spousal testimony, language in *Clark* evidences the continuing viability of the joint participants exception in the Seventh Circuit as applied to the confidential marital communications privilege. After refuting an argument that the Supreme Court in *Trammel* had rejected implicitly the joint participants exception, *id.* at 301 n. 1, the court stated: "[f]urthermore, at least two other circuits have recognized the joint participants exception to a similar marital privilege, the privilege against one spouse testifying as to the confidential communications of the other." *Id.* at 301 (citations omitted). The holding in *Kahn* coupled with the approving language in *Clark* manifests that the joint participants exception still exists as to confidential marital communications in the Seventh Circuit.

Several other circuits have adopted the joint participants exception. In *United States v. Mendoza*, 574 F.2d 1373 (5th Cir.), *cert. denied*, 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978), the Fifth Circuit applied the exception to refute the defendant's argument that the admission of his wife's statements as a co-conspirator violated his privilege as to confidential marital communications. *Id.* at 1380–81.[1] The Fifth Circuit reasoned that Federal Rule of Evidence 501 provides that privileges are to "be interpreted in the light of reason and experience." *Id.* at 1381. The court then "weighed the need for truth against the importance of the policy sought to be furthered by the privilege, and considered the likelihood that recognizing the privilege ... will in fact further that policy...." *Id.* The court concluded that the exception "strikes the proper balance between domestic tranquility and the public interest therein, on the one hand, and the revelation of truth and the attainment of justice, which also are in the public interest, on the other." *Id.*[2]

The Third Circuit has adopted the joint participants exception in the context of the confidential marital communications privilege, *United States v. Ammar*, 714 F.2d 238 (3d Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983), but has refused to apply the exception to the broader marital privilege discussed in *Trammel*. *Appeal of Malfitano*, 633 F.2d 276 (3d Cir.1980). In *Malfitano*, a corporate president's wife was held in contempt for refusing to testify about corporate records to which she had access as corporate secretary. She claimed that the privilege against adverse spousal testimony gave her the right to refuse to testify despite the fact that she was allegedly involved in the criminal acts of her husband. In rejecting the exception as to this privilege, the Third Circuit reasoned that the privilege exists to protect marriages from the potential destructive impact of adverse spousal testimony. The court contended that "all valid marriages, even those with existing domestic difficulties, should be protected." *Id.* at 278. The court further noted that "the very nature of conspiracy cautions against this exception...." *Id.* at 279. The court reasoned that if a witness spouse asserts his or her own privilege not

---

1. The court stated that it was following the Seventh Circuit and the Second Circuit in adopting the exception. *Id.* at 1380–81 (citing *United States v. Kahn*, 471 F.2d 191 (7th Cir.1972), *rev'd on other grounds*, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974); *United States v. Cotroni*, 527 F.2d 708, 712–13 (2d Cir.1975), *cert. denied*, 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830 (1976)). In *Cotroni*, however, the Second Circuit stated that it need not reach the question.

2. The Fifth Circuit recently declined to consider "whether a 'joint crimes' exception, applied in *Mendoza* to the confidential marital communications privilege, might limit the adverse spousal testimony rule in *Trammel*." *See United States v. Archer*, 733 F.2d 354, 359 n. 3 (5th Cir.1984).

to testify adversely against a defendant spouse, the government will be able to get the spousal testimony only by accusing that spouse. The accusation would exert compelling pressure on the spouse to testify out of self-protection. The court concluded that "recognition of an exception where it can be said that both spouses are involved will tend to undermine the marriage precisely in the manner that the privilege is designed to prevent." *Id.*

In *United States v. Ammar*, 714 F.2d 238 (3d Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983), the Third Circuit held that the rationale it employed in *Malfitano* to reject the adoption of the joint participants exception as applied to the privilege against adverse spousal testimony is not applicable to the confidential marital communications privilege. The court analogized to the attorney-client privilege and held that confidential marital communications are admissible to the extent that they pertain to ongoing or future criminal activity. *Id.* at 258. Consequently, the Third Circuit has joined the Fifth and Seventh Circuit's in applying the joint participant's exception to the confidential marital communications privilege.

Most recently, the Fourth Circuit has joined these circuits in applying the exception to the confidential marital communications privilege. *See United States v. Broome*, 732 F.2d 363, 365 (4th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 181, 83 L.Ed.2d 116 (1984). *Broome* relied on *United States v. Mendoza*, 574 F.2d 1373 (5th Cir.1978), in rejecting the appellant's contention that confidential statements made by him to his wife regarding his car theft business were privileged.

■ We now join these circuits in adopting the joint participants exception as applied to confidential marital communications. In so holding, we recognize the unique intimacy of marital communications. Any exception to the marital communications privilege

results in intrusion upon an individual's privacy greater than that occurring in any of the other protected relationships. Out of concern for this unique intimacy ... the future crime or tort exception should not be applied to the marital privilege so as to withdraw protection from communications concerning activity which is not *on its face* unlawful. It follows that a mere statement of a spouse's criminal plans should not be outside the privilege. On the other hand, conduct sought by one spouse that is unambiguously illegal would seem outside the area of desired husband-wife intimacy, so that the admission of related communications would be unlikely to hinder favored discussion. For example, open solicitation of a wife's assistance in forging an instrument, in contrast to asking her help in transporting her husband, should be held outside the marital privilege.

Note, *The Future Crime or Tort Exception to Communications Privileges*, 77 Harv.L.Rev. 730, 734 (1964) (emphasis added). Consequently, we limit the exception to permit admission of only those conversations that pertain to patently illegal activity. By narrowly construing the exception, we are attempting to protect the privacy of marriage and encourage open and frank marital communications. Only where spouses engage in conversations regarding joint ongoing or future patently illegal activity does the public's interest in discovering the truth about criminal activity outweigh the public's interest in protecting the privacy of marriage.

■ In the instant case, the trial court was careful to admit only those confidential marital communications that concerned joint patently illegal activity. We hold that the admission of this evidence was proper under the joint participants exception to the confidential marital communications privilege.[3]

---

3. The government argues that the public's interest in protecting the privacy of marriage is particularly weak in this case because the Simses have had numerous domestic quarrels and each has had extra-marital relations. We do not believe that courts can or should "assess the social

Appellant also argues that even if the testimony itself was admissible, the criminality of the subject of the conversation should have been established by evidence other than the spouse's testimony. Our requirement that the conversations relate to patently illegal activity directly addresses appellant's concern that a spouse could testify to privileged confidential communication merely by asserting that the activities discussed were criminal in nature.

Appellant also argues that the district court erred in failing to ascertain, prior to the introduction of his wife's testimony, the circumstances under which she was persuaded to testify. We agree that this procedure is preferred. In light of the fact that this case was tried to the court and that the trial judge later determined that Denise Sims testified voluntarily, we hold that the trial court did not commit reversible error by failing to conduct a pretrial hearing on the voluntariness of Denise Sims' testimony.

### III.

Appellant's arguments that he was denied his sixth amendment right to counsel of his choice, that he was denied his right to trial by an impartial jury, and that he was placed in double jeopardy are without merit. Accordingly, the conviction is AFFIRMED.

worthiness of particular marriages or the need of particular marriages for the protection of the privilege." *Appeal of Malfitano,* 633 F.2d 276, 279 (3d Cir.1980). We, therefore, reject the contention that appellant's marital problems sup-

port our conclusion in this case. *Cf. United States v. Byrd,* 750 F.2d 585 (7th Cir.1984) (deterioration of the marriage or absence of marital peace is irrelevant unless the spouses are permanently separated).