**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Todd Michael PORTER, Defendant– Appellant.**

No. 91–1619.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 30, 1992.

Decided Feb. 25, 1993.

Rehearing and Rehearing En Banc Denied April 9, 1993.

Janet L. Parker, Asst. U.S. Atty., Bay City, MI (argued and briefed), for plaintiff-appellee.

Mark J. Kriger, Detroit, MI (argued and briefed), for defendant-appellant.

Todd Michael Porter, pro se.

Before: NORRIS and SILER, Circuit Judges; and EDGAR, District Judge.[*]

EDGAR, District Judge.

Todd Michael Porter ("Porter") was convicted on all counts of a 19–count indictment charging him with (Count 1) conspiracy to possess with intent to distribute and to distribute cocaine, 21 U.S.C. § 846; (Count 2) conspiracy to receive explosives in violation of 21 U.S.C. § 844(d), 18 U.S.C. § 371; (Count 3) forcing and inducing a minor to assist in avoiding apprehension or detection, 21 U.S.C. § 845b(a)(2); [1] (Counts 4–18) receiving explosives while being a user of a controlled substance, 18 U.S.C. § 842(i)(3); and (Count 19) distributing a controlled substance to a person under age 21, 21 U.S.C. §§ 841(a)(1) and 845(a). The charges stemmed from Porter's exchange of explosives with Wisan ("Sam") Petros for cocaine and cash. The explosives were used to destroy real and personal property such as buildings and automobiles in Detroit, Michigan, in 1988 and 1989. Porter was sentenced to a total of 252 months on all counts. Porter appeals his conviction and sentence. We AFFIRM.

## I.

The disposition of this case on appeal hinges upon two evidentiary rulings made by the district court. In one of these rulings, the district court allowed portions of a written statement made by Kim Niswonger ("Niswonger"), Porter's teenaged girlfriend, to be read into evidence as past recollection recorded under Federal Rules of Evidence 803(5). These statements had particular reference to an incident wherein Porter told Niswonger, if beeped by him, to go to his grandmother's house, flush some cocaine to be found there down the toilet, and hide about $30,000 in cash. This testimony was directed in particular at Count 3 of the indictment charging Porter with forcing and inducing a minor to assist in avoiding apprehension or detection, 21 U.S.C. § 845b(a)(2).

On October 5, 1989, Niswonger had given a very detailed written statement to the Federal Bureau of Investigation. This statement related various personal experiences with Porter involving cocaine and explosives between July and September 1989. Niswonger was then 17 years old. The written statement makes it clear that Porter had threatened Niswonger, and that she was afraid of him. On the witness stand, Niswonger said that while she did recall giving the written statement and signing it, she now really did not remember much about what she had said in the statement because, she testified, she was confused and on drugs at the time the statement was made.

Rule 803(5) provides that:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

**(5) Recorded recollection.** A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

A document may be read to a jury under the rule as past recorded recollection if (1) the witness once had knowledge about the matters in the document; (2) the witness now has insufficient recollection to testify fully and accurately; and (3) the record

---

[*] The Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. This statute is now a part of 21 U.S.C. § 861.

was made at a time when the matter was fresh in the witness' memory and reflected the witness' knowledge correctly. *United States v. Patterson,* 678 F.2d 774, 778 (9th Cir.), *cert. denied,* 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982); *United States v. Edwards,* 539 F.2d 689, 691–92 (9th Cir.), *cert. denied,* 429 U.S. 984, 97 S.Ct. 501, 50 L.Ed.2d 594 (1976).

■ "The touchstone for admission of evidence as an exception to the hearsay rule has been the existence of circumstances which attest to its trustworthiness." *United States v. Williams,* 571 F.2d 344, 349 (6th Cir.), *cert. denied,* 439 U.S. 841, 99 S.Ct. 131, 58 L.Ed.2d 139 (1978). The district court made a very careful analysis of Niswonger's statement and the circumstances of her trial testimony, and found sufficient indicia of trustworthiness to admit portions of the statement. Among the factors considered by the district court were: (1) Niswonger admitted making the statement; (2) the statement was made soon after the events related in the statement; (3) the statement was signed by Niswonger on each of its five pages; (4) the wording of the statement had been changed and initialed by Niswonger 11 times; (5) the statement was made under penalty of perjury; (6) the statement contained considerable detail which was internally consistent, as well as consistent with other uncontradicted evidence which had already been admitted; and (7) Niswonger gave the statement at a time when she was fearful of reprisal from the defendant. Finally, the district judge, who had full opportunity to view the witness' demeanor and evaluate her testimony, determined that Niswonger, in attempting to distance herself from the contents of the statement, was being "disingenuous" and "evasive," and was acting either out of her recently professed desire to marry the defendant or out of fear of the defendant.

The facts found by the district court are sufficient to meet the criteria of Rule 803(5). The detail in the statement and the care with which it was put together make it clear that Niswonger once had knowledge of the matters in the statement. Whether by virtue of mind-altering drugs or by intentional design, she had insufficient recollection to testify truthfully and accurately about the matters comprising the statement's contents. Finally, the statement was made shortly after events set out in the statement when those events were fresh in her mind, and the statement reflected her knowledge correctly.

■ Whether or not the statement correctly reflected Niswonger's knowledge is a matter which bears further discussion in view of the particular facts in this case. Niswonger never actually testified, as did the defendant in *Williams,* that what she said in her statement was accurate. 571 F.2d at 348–49. In fact, Niswonger testified that she was "screwed up" on drugs at about the time the statement was made, and although she tried to tell the truth in the statement, she was not sure she had done so. Rule 803(5) does not specify any particular method of establishing the knowledge of the declarant nor the accuracy of the statement. It is not a *sine qua non* of admissibility that the witness actually vouch for the accuracy of the written memorandum. Admissibility is, instead, to be determined on a case-by-case basis upon a consideration, as was done by the district court in this case, of factors indicating trustworthiness, or the lack thereof.

While Rule 803(5) treats recorded recollection as an exception to the hearsay rule, the hearsay is not of a particularly unreliable genre. This is because the out-of-court declarant is actually on the witness stand and subject to evaluation by the finder of fact, in this case the jury. If the jury chose to believe what Niswonger said in the recorded statement rather than what she said while testifying, that decision was at least made based upon what it observed and heard from her in court. *Williams,* 571 F.2d at 350 (citing *Di Carlo v. United States,* 6 F.2d 364, 368 (2d Cir.1925)). We find that the district judge did not abuse his discretion in allowing portions of Niswonger's statement to be read to the jury under Rule 803(5).

The district court also found the Niswonger statement admissible under Federal

Rules of Evidence 803(24), the catch-all hearsay exception rule. Rule 803(24) does afford courts some discretion to use "good sense" in making highly probative evidence available to the trier of fact, even if the evidence would not be strictly admissible under Rule 803(5). 4 Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence § 803(5)[01] (1992). However, having found the disputed evidence to be admissible under Rule 803(5), no determination need here be made on admissibility under Rule 803(24).

## II.

The other evidentiary issue in this case is presented by the testimony of another government witness, Julie Ann Jones. Ms. Jones had been married to Porter, but at the time of her testimony, October 24, 1990, she and Porter were divorced. She testified that in October 1988, while still legally married to Porter, she had been in the hospital twice with a miscarriage and complications arising therefrom. While in the hospital and after she was discharged, she had not seen Porter in over a week. She then "moved out." There is no indication in the record that they ever reconciled. Jones was permitted to testify that 10 or 12 days after she had moved out, Porter called her on the phone to tell her that he had gone to Florida with two of the alleged coconspirators to buy a kilo of cocaine.

Although defense counsel's objection to this testimony was somewhat amorphous, giving him the benefit of the doubt it can be said that his objection was based on the adverse spousal testimony privilege, as well as the confidential marital communications privilege.

■ The adverse spousal testimony privilege protects one spouse from being compelled to testify against the other. This privilege may not be asserted after a marriage has been terminated. *Pereira v. United States*, 347 U.S. 1, 6, 74 S.Ct. 358, 361, 98 L.Ed. 435 (1954); *United States v. Byrd*, 750 F.2d 585, 590 (7th Cir.1984). Further, this privilege may be exercised only by the testifying spouse. *Trammel v. United States*, 445 U.S. 40, 53, 100 S.Ct.

906, 913, 63 L.Ed.2d 186 (1980); *United States v. Sims*, 755 F.2d 1239, 1240–41 (6th Cir.), *cert. denied*, 473 U.S. 907, 105 S.Ct. 3533, 87 L.Ed.2d 656 (1985). Since Jones and Porter were divorced at time of trial, and since Jones did not elect to exercise the privilege, her testimony was properly admitted, there being no violation of the adverse spousal testimony privilege.

■ The confidential marital communications privilege excludes confidential communications made by one spouse to the other during the marriage. This privilege is assertable by either spouse. *Sims*, 755 F.2d at 1241. The rationale for this privilege differs somewhat from that of the adverse testimony privilege:

> The testimonial privilege looks forward with reference to the particular marriage at hand: the privilege is meant to protect against the impact of the testimony on the marriage. The marital communications privilege in a sense, is broader and more abstract: it exists to insure that spouses generally, prior to any involvement in criminal activity or a trial, feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law.

*Byrd*, 750 F.2d at 590.

■ There are three prerequisites to the assertion of this privilege. (1) At the time of communication there must have been a marriage recognized as valid by state law; (2) the privilege applies only to "utterances or expressions intended by one spouse to convey a message to the other," *United States v. Lustig*, 555 F.2d 737, 748 (9th Cir.), *cert. denied*, 434 U.S. 926, 98 S.Ct. 408, 54 L.Ed.2d 285 (1977) and 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 795 (1978); and (3) the communication must be made in confidence. *See generally* 2 Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence § 505[4] (1992).

Courts have recognized certain exceptions to the privilege. This circuit and others have, for example, recognized an exception for marital communications which pertain to joint criminal activity of the spouses. *See Sims*, 755 F.2d at 1241, 1244.

While the privilege is said to apply to confidential communications made during marriage, an exception to the privilege has been recognized by the Second, Seventh, Eighth and Ninth Circuits where the evidence consists of statements made by one spouse after the spouses have permanently separated, even though they may not have been legally divorced. *In Re Witness Before Grand Jury*, 791 F.2d 234, 238–39 (2d Cir.1986); *United States v. Fulk*, 816 F.2d 1202, 1205 (7th Cir.1987); *Byrd*, 750 F.2d at 593; *United States v. Frank*, 869 F.2d 1177, 1179 (8th Cir.), *cert. denied*, 493 U.S. 839, 110 S.Ct. 121, 107 L.Ed.2d 82 (1989); *United States v. Roberson*, 859 F.2d 1376, 1381 (9th Cir.1988).

■■■■ The justification for the exception is the result of balancing the need for protecting spousal communications against the importance of the search for truth. In this balancing process we are mindful that while privileges are important, they must be construed narrowly. As the Supreme Court said in *Trammel*, privileges "must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominate principle of utilizing all rational means for ascertaining truth.' " 445 U.S. at 50, 100 S.Ct. at 912 (quoting *Elkins v. United States*, 364 U.S. 206, 234, 80 S.Ct. 1437, 1456, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting)); *United States v. Nixon*, 418 U.S. 683, 709–10, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). Here we find that the search for truth outweighs any need to protect the confidentiality of separated couples. *Byrd*, 750 F.2d at 593. Therefore, joining all other circuits which have faced this issue we hold that the privilege is inapplicable where the spouses have permanently separated.

■■■■ Two circuits, the Second and Ninth, have adopted variations of the exception which (1) would permit either party to show special circumstances that render more or less likely the possibility of reconciliation at the time of communication, *In re Witness Before Grand Jury*, 791 F.2d at 238; or (2) would require the trial court to undertake a specific detailed investigation into the irreconcilability of the marriage. *Roberson*, 859 F.2d at 1381. It is our view that a district court should, when faced with this issue, make a factual finding as to whether the spouses were permanently separated at the time of the questioned communication. This determination can be based on facts elicited at a jury-out hearing or during the trial itself. We do not believe, however, that the trial court should itself be compelled to initiate a fact-finding investigation of this issue, nor consider any particular factors as has been suggested by the Ninth Circuit in *Roberson*, 859 F.2d at 1380–81. This factual determination will not place an unreasonable fact-finding burden on trial courts. It should prove to be no more difficult than the many other such fact-finding calls which district courts must make under the Federal Rules of Evidence.

■■■■ In this case, without any discussion about the status of the separation, the district court admitted Jones' testimony. While Jones had not been separated from Porter for a long period of time, Porter had not visited his wife during her hospitalization and she had "moved out." Moreover, we know with hindsight that their separation at the time of the communication was indeed permanent. Where the Federal Rules of Evidence necessarily confer upon the trial judge considerable latitude and judgment in ruling on a disputed point of evidence, the judges ruling will not be reversed absent a showing of abuse of discretion. *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir.1990); *United States v. Rios*, 842 F.2d 868, 872 (6th Cir.1988), *cert. denied*, 488 U.S. 1031, 109 S.Ct. 840, 102 L.Ed.2d 972 (1989); *United States v. Mahar*, 801 F.2d 1477, 1495 (6th Cir.1986); *Mitroff v. Xomox Corp.*, 797 F.2d 271, 275 (6th Cir.1986). We find no abuse of discretion by the trial judge in admitting Jones' testimony.

The other matters raised in this appeal have been considered and are without merit.

The defendant's conviction is AFFIRMED.

SILER, Circuit Judge, concurring.

I concur in the disposition of this case by the majority opinion, but I write separately because my reasoning for the affirmation on Part I is distinct from that related in the majority opinion.

I believe that the district court erred when it admitted the evidence from Niswonger's written statement under Fed. R.Evid. 803(5), because the rule requires that the memorandum has "to reflect that knowledge [about the matter] correctly." Although Niswonger admitted making the statement shortly after the events related in the statement, she indicated that she did not know whether the statement given to the FBI agent was truthful. In fact, the following questions and answers were made:

Q ... when you talked to Mr. Hawser and made that statement that you signed, were those statements that you made then the truth to the best of your ability?

A I don't know, because I was so confused then, I—

Q Were you trying to lie to him then?

A No, I wasn't lying to him but I lied a lot because I was really screwed up then, I mean it was before I went to rehab and all that.

\* \* \* \* \* \*

Q Were you trying to lie to Mr. Hawser when you talked to him?

A No, I lied about—I lied about everything then.

This is unlike the situation which occurred in *United States v. Williams*, 571 F.2d 344 (6th Cir.), *cert. denied*, 439 U.S. 841, 99 S.Ct. 131, 58 L.Ed.2d 139 (1978), where the witness admitted that the prior statement was true and accurate both at the time it was made and during the trial. However, the court here admitted the prior statement under the residual exception to the hearsay rule, Fed.R.Evid. 803(24), finding that the statement met the requirements set out under the rule. However, it did not make a finding under the requirement of the rule which provides:

[A] statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

As no issue was raised about that on appeal, it must not have been an issue at trial. Therefore, because the district court found under Rule 803(24) that it was admissible under this alternative provision, I would affirm the district court, as it did not abuse its discretion in finding that rule applicable and admitting the evidence.