14 F.3d 602
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Lenroy BROWN, Defendant-Appellant.
 No. 93-1357.
 United States Court of Appeals, Sixth Circuit.
 Dec. 21, 1993.
 
 Before: RYAN and SUHRHEINRICH, Circuit Judges; and LIVELY, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Defendant Lenroy Brown was convicted of four counts of drug-related activity: conspiracy to import cocaine base in violation of 21 U.S.C. Secs. 952(a), 960(b)(1)(C), and 963; importation of cocaine base in violation of 18 U.S.C. Sec. 2 and 21 U.S.C. Secs. 952(a) and 960(b)(1)(C); conspiracy to possess cocaine base with the intent to distribute in violation of 21 U.S.C. Secs. 841(a)(1), 841(b)(1)(A)(iii), and 846; and possession of cocaine base with intent to distribute in violation of 18 U.S.C. Sec. 2 and 21 U.S.C. Secs. 841(a)(1) and 841(b)(1)(A)(iii).
 
 We address three issues on appeal:
 
 2
 1) whether the district court erred in ruling that defendant's wife could not properly invoke the marital privilege;
 
 
 3
 2) whether the district court erred in admitting evidence of prior Federal Express deliveries pursuant to Fed.R.Evid. 404(b); and
 
 
 4
 3) whether the district court erred in allowing the prosecutor to cross-examine defendant about a 1987 drug-related arrest pursuant to Fed.R.Evid. 608(b).
 
 
 5
 We conclude that the district court did not err in respect to any of these issues and we affirm the judgment of conviction.
 
 I.
 
 6
 On June 25, 1992, at the Federal Express Company hub in Memphis, Tennessee, a U.S. Customs inspector examined a package from Antigua and found approximately 786 grams of marijuana. The package was addressed to Donna Brown, 1030 Kalamazoo Avenue, S.E., Grand Rapids, Michigan. The U.S. Customs Office in Grand Rapids was unable to make arrangements for a controlled delivery, so the package was seized in Memphis.
 
 
 7
 On June 30, 1992, a Customs canine at the Federal Express hub in Memphis alerted on another package from Antigua. The package contained approximately 160 grams of crack cocaine. The package was addressed to Trevor Charles, 333 Paris Avenue, S.E., Apartment 5, Grand Rapids, Michigan. This time, the Grand Rapids Customs office was able to arrange a controlled delivery.
 
 
 8
 Later that same day, the package was delivered by a police officer dressed in a Federal Express uniform. Lenroy Brown answered the door, and the officer asked for Trevor Charles. Charles came to the door, produced a driver's license, and signed for the package. According to the officer, Brown stood in the hallway and kept looking up and down the hallway like a "lookout." Charles and Brown went back inside the apartment, and the officer gave the signal to execute the search warrant.
 
 
 9
 When the officers entered the apartment, they found both Charles and Brown in the kitchen and the unopened package under the refrigerator. Both men were arrested. Charles later pled guilty to a reduced charge and agreed to testify against Brown as part of a plea agreement.
 
 
 10
 At trial, Charles testified that he had known Brown since about 1979. Both men's fathers were originally from Antigua. In early 1992, Brown and his wife Donna experienced marital problems, and Brown began living at Charles' apartment. Charles also stated that Brown received a phone call from a man in Antigua in late June, and as a result of the phone call, Brown expected a package of cocaine to be delivered to Charles' apartment on June 30. Charles testified that the package sent to his apartment belonged to Brown, despite the fact that it was addressed to Charles. He admitted he was a crack cocaine dealer and that he expected to buy some of the crack from Brown.
 
 
 11
 Over objection, Charles testified about other packages of cocaine that were delivered to Brown on two prior occasions. In May 1992, Charles was present when Brown received a Federal Express package outside his former residence on Oakhill Street in Grand Rapids. The two men waited across the street and watched for the Federal Express truck. When the truck arrived, Brown approached the driver, displayed his driver's license, and signed for the package. Brown and Charles then returned to Charles's apartment, where they opened the package. The package contained powder cocaine, and Charles purchased one-half ounce from Brown.
 
 
 12
 Charles also testified that Brown received another package from Antigua about a week later. Charles was not present when the package was delivered, but he saw the package later at his apartment. The package contained powder cocaine, and Charles again purchase one half ounce of the cocaine from Brown. Finally, Charles testified that Brown had expected a package of marijuana, which was supposedly addressed to Donna Brown on Kalamazoo street. This is the package that was seized in Memphis by Customs.
 
 
 13
 The government called Donna Brown, Brown's estranged wife, as a witness. After being advised by the court concerning the marital privilege, Donna Brown declared that she would rather not testify. After both attorneys and the court questioned Donna Brown, the court ruled that the marital privilege did not apply because Brown and his wife were permanently separated, and Donna Brown considered the marriage to be over. Donna Brown testified that she had no knowledge of a package of marijuana being sent to her address and that she would not have been home to receive the package, as she works during the day. She did state, however, that Brown had access to her house even after he moved out. Finally, she testified that after Brown was arrested, and at his request, she made several calls to a Connecticut phone number. Brown had asked her to relay a message that he was in trouble and needed help.[1]
 
 
 14
 Tony Smith, a Federal Express employee, testified that he made two "unusual" package deliveries on Oakhill Street in the spring of 1992. On both occasions, he was met outside the address by an individual who came from across the street, showed him a driver's license matching the address and last name on the package, and signed for the package. Smith identified Brown as the person who received both of those packages.
 
 
 15
 Brown testified in his own defense. He denied knowledge of all the packages, and stated that he had never received any packages from Antigua. He also testified that he had never seen Tony Smith, the Federal Express delivery man, outside of the courtroom. At the conclusion of Brown's direct testimony, his attorney asked whether Brown had ever possessed any illegal drugs with the intention of distributing them. Brown answered that he had not. On cross-examination, the prosecutor asked Brown whether he had ever possessed any illegal drugs. Brown again said no. The prosecutor then questioned Brown about a 1987 arrest in Georgia in which 40 pounds of marijuana was found in the back seat of a car which Brown was driving. Brown admitted he had been arrested, but denied any knowledge of the marijuana found in his car. These charges were apparently dismissed. The jury found Brown guilty on all counts, and this appeal followed.
 
 II.
 A. Marital Privilege
 
 16
 Brown's first contention is that the district court erred with respect to the marital privilege in directing Donna Brown to testify over her objections, as he and his wife were married at the time of trial. Brown also argues that, even if Donna Brown could not claim the privilege, he could assert the privilege with respect to his request that she convey a message to someone in Connecticut after his arrest.
 
 
 17
 There are two types of marital privileges: the adverse spousal testimony privilege and the confidential marital communications privilege. The two privileges each have a different rationale:
 
 
 18
 The testimonial privilege looks forward with reference to the particular marriage at hand: the privilege is meant to protect against the impact of the testimony on the marriage. The marital communications privilege in a sense, is broader and more abstract: it exists to insure that spouses generally, prior to any involvement in criminal activity or a trial, feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law.
 
 
 19
 United States v. Byrd, 750 F.2d 585, 590 (7th Cir.1984).
 
 The testimonial privilege
 
 20
 protects one spouse from being compelled to testify against the other ... [and] may not be asserted after a marriage has been terminated. Further, this privilege may be exercised only by the testifying spouse.
 
 
 21
 United States v. Porter, 986 F.2d 1014, 1018 (6th Cir.), cert. denied, 114 S.Ct. 347 (1993) (citations omitted). Courts have held that the testimonial privilege may not be exercised "where the marriage between the defendant and the testifying spouse is in fact moribund, though legally still valid." Byrd, 750 F.2d at 590; see also United States v. Cameron, 556 F.2d 752, 755-56 (5th Cir.1977).
 
 
 22
 Although Donna Brown expressed a desire to exercise the testimonial privilege, the district judge found that she did so because she did not want to testify against anyone, not because she wished to avoid testifying against her husband to help preserve her marriage. In his detailed findings of fact, the district judge explicitly found that Donna Brown considered the marriage to be over, with no realistic hope of reconciliation. On that basis, the court found that the testimonial privilege was not available to Ms. Brown. Defendant has not shown that the court's fact findings are clearly erroneous. Consequently, the district court was correct in ruling that Donna Brown could not properly exercise the testimonial privilege.
 
 
 23
 The communications privilege "excludes confidential communications made by one spouse to the other during the marriage" and may be asserted by either spouse. Porter, 986 F.2d at 1018. Three prerequisites exist for the exercise of this privilege:
 
 
 24
 (1) At the time of the communication there must have been a marriage recognized as valid by state law;
 
 
 25
 (2) the privilege applies only to "utterances or expressions intended by one spouse to convey a message to the other"; and
 
 
 26
 (3) the communications must be made in confidence.
 
 
 27
 Id. This circuit has joined several other circuits in holding that this privilege is unavailable if the parties were legally separated at the time of the communication. Id. at 1019.
 
 
 28
 We conclude that Lenroy Brown may not properly exercise the communications privilege to exclude Donna Brown's testimony that Brown requested that she call a certain phone number in Connecticut and tell the person called that Brown was in trouble. First, the Browns were permanently separated at the time of the communication, and Porter holds that communications made after such a separation are not covered by the privilege. Second, the communication was not confidential and was not intended to be confidential; Donna Brown was instructed to relay the defendant's message to a third party. The district court did not err in requiring Donna Brown to testify.
 
 B. Prior Federal Express Deliveries
 
 29
 Brown does not challenge the evidence regarding the marijuana package seized in Memphis on June 25. Instead, he challenges the "other acts" evidence provided by both Charles and Smith regarding the two Federal Express packages of cocaine allegedly received by Brown in May 1992. He makes this challenge on the grounds that the evidence was inadmissible because the requirements of Rule 404(b) were not met. Brown makes the generalized argument that the evidence is not sufficiently reliable to be probative, principally because there was insufficient proof that the "other act" deliveries occurred. The district court allowed this evidence under Fed.R.Evid. 404(b) to show the "background and development of the conspiracy" alleged in the indictment and to show that Brown "knowledgeably participated" in that conspiracy. Rule 404(b) states that evidence of other crimes, wrongs, or acts is admissible to prove knowledge, provided, of course, that knowledge is an issue at trial.
 
 
 30
 We have previously explained the analysis for reviewing Rule 404(b) challenges:
 
 
 31
 First, the court must decide whether the evidence would serve a permissible purpose such as one of those listed in the second sentence of Rule 404(b). If so, the court must consider whether the probative value of the evidence is outweighed by its potential prejudicial effect.
 
 
 32
 United States v. Vance, 871 F.2d 572, 575-76 (6th Cir.1989) (quoting, United States v. Huddleston, 811 F.2d 974, 976 (6th Cir.1987), aff'd Huddleston, 485 U.S. 681). We review the district court's decision on the first issue de novo. The probative value/prejudicial effect weighing decision is reviewed for abuse of discretion.
 
 
 33
 Brown testified that he did not know that the package from Antigua that was delivered to Trevor Charles on June 30, which is the subject of the charges on which Brown was convicted, contained cocaine. He therefore placed in issue his knowledge that the package contained contraband narcotics. Through the testimony of Charles, the government presented evidence to show that Brown had received two other packages containing cocaine. The district court did not err in admitting the "other acts" evidence to show, as the court put it, that Brown "knowledgeably participated" in the conspiracy to possess cocaine. We express no opinion whether Fed.R.Evid. 404(b) was the proper, or even the necessary, basis to justify admission of evidence regarding the two prior deliveries to prove the "background and development of the conspiracy."
 
 
 34
 Once a permissible purpose for admitting proposed "other acts" evidence is established under Rule 404(b), the district court must determine whether the government presented sufficient evidence to allow a reasonable jury to find, by a preponderance of the evidence, that the "other acts" occurred. Huddleston v. United States, 485 U.S. 681, 690 (1988).
 
 
 35
 Charles and Smith both testified, unequivocally, that the prior deliveries were made, and Charles testified that the packages contained cocaine. Brown testified in his own defense and denied ever receiving any packages from Antigua, via Federal Express or otherwise, and denied ever having seen delivery man Smith. The district court resolved the factual dispute against defendant and, on the evidence presented, was entirely justified in doing so. Accordingly, the district court did not err in admitting this evidence.
 
 C. 1987 Marijuana Arrest
 
 36
 At the conclusion of Brown's direct testimony, his attorney asked whether Brown had ever possessed any illegal drugs with the intention of distributing them. Brown said he had not. On cross-examination, the prosecutor also asked whether Brown had ever possessed any illegal drugs. Brown again said no. The government then asked Brown about a 1987 arrest for possession of marijuana. Brown alleges that this reference was improper under Fed.R.Evid. 608(b). Rule 608(b) states:
 
 
 37
 Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness....
 
 
 38
 The defendant raised the issue of the prior drug possession on direct examination by categorically denying that he ever possessed illegal drugs. Clearly, Brown opened the door to impeachment when he made that blanket denial. The prosecutor was entirely justified in attempting to show, through cross-examination of Brown, that he had indeed previously possessed illegal drugs. The district court did not abuse its discretion in permitting this inquiry.
 
 III.
 
 39
 For the above reasons, we AFFIRM the decision of the district court.
 
 
 
 [1]
 The government introduced evidence to tie this Connecticut number into the drug conspiracy between Brown and Antigua