The PROCTER & GAMBLE
CO., Plaintiff,

v.

BANKERS TRUST COMPANY,
et al., Defendants.

No. C-1-94-735.

United States District Court,
S.D. Ohio,
Western Division.

Dec. 20, 1995.

Leslie Gordon Fagen, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Lavins.

Richard H. Klapper, Sullivan & Cromwell, New York City, for Bankers Trust.

John D. Luken, Dinsmore & Shohl, Cincinnati, OH, for P & G.

*OPINION AND ORDER UPHOLDING THE ASSERTION OF SPOUSAL PRIVILEGE BY JACK AND ROBIN LAVIN*

FEIKENS, District Judge.

### I. *Background*

In this complex derivative instruments case, Plaintiff Procter & Gamble ("P & G") has sought extensive discovery from Defendants Bankers Trust Company and BT Securities Corporation ("BT"). A large part of this discovery has focused on what has been termed the "Bankers Trust tapes," recordings made by BT of conversations between its traders and customers. BT's automated process records all conversations on specific phones primarily for purposes of settling trade disputes. BT has largely complied with P & G's vast requests for these taped conversations and would have produced the conversations at issue but for the assertion of a spousal privilege by Jack Lavin and Robin Lavin, his wife.

At the time of these recordings, Lavin was a supervisor in BT's leveraged derivative transactions department. Between June 17 and July 22, 1994, seven personal conversations between Lavin and his wife were taped by BT. These conversations all occurred on a phone line between Lavin's private Chicago office and his home on what he believed was his private line. When P & G sought to discover these tapes, the Lavins asserted their spousal privilege. After P & G challenged this assertion of privilege, transcripts of the conversation were submitted for my *in camera* review. The parties also submitted written briefs and by agreement oral argument was heard telephonically on Monday, December 11, 1995. Based upon my review of the transcripts and the arguments of the parties, I have concluded that Robin Lavin's assertion of the spousal privilege was proper and bars P & G's discovery of these tapes.

### II. *The Spousal Privileges*

Federal common law provides that there are two marital privileges—the adverse testimony privilege and the confidential communications privilege. *See, generally, Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980); *United States v. Sims,* 755 F.2d 1239 (6th Cir.1985); 2 Mueller & Kirkpatrick, *Federal Evidence* §§ 206–07 (2d ed. 1994). The adverse testimony privilege permits witnesses to refuse to testify against their spouses and is not at issue in this dispute. The confidential communications privilege excludes confidential communications made by one spouse to the other during a marriage. *Wolfle v. United States,* 291 U.S. 7, 14, 54 S.Ct. 279, 280, 78 L.Ed. 617

(1934); *United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir.1993). This privilege may be asserted by either spouse. *Porter*, 986 F.2d at 1018. There are three related reasons given to support the existence of this privilege:

> One is that human privacy ought to be respected, especially in the context of the marital relationship, and in the Twentieth Century this principle may have attained constitutional status.
>
> Another reason is that it is unseemly, even offensive to many, to use the power of the state to force revelation of marital confidences. Finally, this protected privacy, and the confidence between spouses that it encourages, are utterly essential to the complete fulfillment of marriage.

2 Mueller & Kirkpatrick, *supra*, at § 207.

■■■■ There are three prerequisites to assertion of this privilege. First, at the time of communication there must have been a marriage recognized as valid by state law. Second, the privilege applies only to utterances intended to convey a message. Finally, the communication must be made in confidence. *Porter*, 986 F.2d at 1018. Because communications between spouses are presumed confidential, P & G has the burden of establishing that the subject conversations are not privileged. *Blau v. United States*, 340 U.S. 332, 333, 71 S.Ct. 301, 302, 95 L.Ed. 306 (1951); *United States v. Marashi*, 913 F.2d 724, 730 (9th Cir.1990).

### III. *Analysis*

■■ P & G makes two primary arguments. First, P & G contends that the conversations between the Lavins were not made in confidence because they knew their conversations were being recorded. The accepted rule is that when a conversation is made before a third person, or when a conversation is likely to be heard by a third person, such communications are not privileged because they were not made in confidence. *Wolfle*, 291 U.S. at 14, 54 S.Ct. at 280; *United States v. Klayer*, 707 F.2d 892, 894–95 (6th Cir.1983). Hence, if in fact the Lavins knew their conversations were being taped, the conversations would not be privileged.

■■ P & G can only point to BT's routine practice of recording the conversations of its marketers and traders as evidence that the Lavins knew their conversations were being recorded. Jack Lavin's awareness of this policy hardly establishes an awareness that his private phone was being taped. The evidence shows that Mr. Lavin—a supervisor, not a marketer or trader—understood that his line was not taped. In an April 4, 1994 conversation between Lavin and a New York based marketer, Lavin asked the marketer to place a telephone call to a customer, stating: "You dial because I want it [the call] to be taped." More important, in one of the conversations sought here by P & G, Lavin. reveals to his wife his understanding that his personal telephone line was not taped. Furthermore, when Lavin learned his private phone was taped, he immediately ordered that the taping be stopped.

My *in camera* review of the tapes has convinced me that the subject conversations were understood by the Lavins to be private and confidential. They are deeply personal and are the very type of conversation the confidential communications privilege was intended to protect. It is my conclusion that Lavin's telephone was erroneously included among the phones on which the taping system was installed and that neither Jack nor Robin Lavin was aware of this error when the subject conversations were recorded.

■■■■ P & G's second argument is that Jack Lavin waived the spousal privilege as it applies to the subject conversations. Indeed, the spousal privilege can be waived by voluntary revelation of the communication. *Clady v. County of Los Angeles*, 770 F.2d 1421, 1433 (9th Cir.1985); John W. Strong, *McCormick on Evidence* § 80 (4th ed. 1992). In support of this argument, P & G points to the fact that personnel of the Federal Reserve Bank in New York and BT counsel have reviewed the tapes and that Jack Lavin did not timely assert the spousal privilege. However, I note that P & G has made no showing that Lavin permitted review of the tapes prior to his knowledge of their existence. The governing rule is that the unauthorized disclosure of privileged information by a third party does not constitute waiver of

528

a privilege. *In re Berkley and Co.,* 466 F.Supp. 863, 869 (D.Minn.1979), *aff'd.,* 629 F.2d 548 (8th Cir.1980); *Resolution Trust Corp. v. Dean,* 813 F.Supp. 1426, 1430 (D.Ariz.1993); *In re Dayco Corp. Derivative Securities Litigation,* 102 F.R.D. 468, 470 (S.D.Ohio 1984). Moreover, I need not reach this issue. Even if P & G could demonstrate that Jack Lavin waived his right to assert the spousal privilege, it has made no showing that Robin Lavin has done so. If a spouse desires to disclose confidential marital communications without the consent of the other spouse, the privilege can still be asserted by the non-waiving spouse. 2 Mueller & Kirkpatrick, *supra,* at § 207. See also *United States v. Neal,* 532 F.Supp. 942, 947 (D.C.Colo.1982), *aff'd.,* 743 F.2d 1441 (10th Cir.1984); *State v. Compton,* 104 N.M. 683, 726 P.2d 837, 841 (1986); *People v. Gardner,* 105 Ill.App.3d 103, 60 Ill.Dec. 951, 433 N.E.2d 1318 (1982).

P & G has also argued the mere fact that BT recorded the Lavins' telephone calls waived the spousal privilege. This argument is without merit, reflecting a basic misunderstanding of the policies underlying spousal privilege.

Finally, I note that the conversations sought by P & G do not specifically refer to P & G. Even if P & G could show that the spousal privilege does not apply or that it was waived, the conversations at issue—seven conversations out of more than 6,500 provided P & G—have doubtful probative value.

IV. *Conclusion*

P & G has failed to show the prerequisites of the spousal privilege have not been met or that this privilege was waived. The Lavins' assertion of the spousal privilege is therefore affirmed.

IT IS SO ORDERED.