**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0359n.06

Case No. 16-1895

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Jun 21, 2017<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Plaintiff-Appellee, | ) |  |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE WESTERN |
| MICHAEL SCHWARTZ, | ) | DISTRICT OF MICHIGAN |
|  | ) |  |
| Defendant-Appellant. | ) |  |
|  | ) |  |

_____/

**Before: GUY, ROGERS, and KETHLEDGE, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** Defendant, Michael Schwartz, appeals his conviction and sentence for four counts related to child pornography. We affirm.

**I.**

Defendant married Amy Bradley and moved in with her and her adolescent children. Soon after, defendant drilled small holes in the wall between a storage space and Bradley's 12-year-old daughter's bedroom. Using a smartphone or tablet computer, defendant recorded Bradley's daughter in various states of undress.

Bradley discovered a video of her daughter on defendant's tablet and confronted him at his workplace, Lowe's, demanding he return keys to her home and telling him he would go to prison. Defendant followed Bradley out of his workplace, and in the parking lot yelled that he didn't put the holes in her daughter's wall – a fact Bradley had not mentioned. Bradley brought the tablet to the police but had trouble locating the video in question, as defendant had attempted to delete it remotely. Officers obtained search warrants for defendant's tablet and online accounts, and found numerous images of real and simulated child pornography.

After Bradley confronted defendant, he contacted his pastor, Daniel Parker, and requested a meeting. Unbeknownst to defendant, Bradley had already told Parker's wife about the video, who informed Parker of its content. Parker thought defendant seemed "erratic" and "in a place of harm," so he met defendant at a diner, "an open ground public place." Parker immediately informed defendant that he was a mandatory reporter and would "have to share information if there's harm to others or themselves." Defendant told Parker that he kept a video he "felt very bad about having" for a couple days, then deleted it, but Bradley somehow discovered it. Parker asked defendant if he ever touched his stepdaughter, and he replied, "I don't touch, I just look."

Defendant subsequently left the state, but soon contacted his local police department to ask "what kind of trouble" he could be in. Acting on information from local authorities, federal agents arrested defendant in South Carolina. The government charged him with one count of sexual exploitation of a child and attempted sexual

exploitation of a child (18 U.S.C. § 2251(a) and (e)), and three counts of possession of child pornography (18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2), 2256(8)(A)).

Prior to trial, the government moved for a ruling on the admissibility of Parker's testimony, anticipating defendant would invoke the clergy-communicant privilege. The district court instructed defendant to file a response should he wish to do so, but defendant did not contest the admissibility of Parker's testimony. The district court admitted Parker's testimony, finding the privilege inapplicable since defendant had no expectation of confidentiality. Defendant likewise did not object to admission of Bradley's testimony. After a brief deliberation, the jury found defendant guilty on all counts.

At sentencing, defendant objected to a two-level enhancement for obstruction of justice based on perjury and/or destruction of evidence. *See* U.S.S.G. § 3C1.1. The district judge overruled the objection. He stated that he would "wade into the nature of the testimony offered," and found that "this jury did exactly what the judge did in listening to the testimony: found the defendant's testimony less than credible." The district judge further ruled that, after "spen[ding] quite a bit of time going through this," he "believe[d] that this defendant was not truthful in this courtroom," and that his testimony was "perjurious." The court applied the obstruction enhancement and sentenced defendant to 240 months of imprisonment. Defendant appeals, renewing his objection to the obstruction-of-justice enhancement and newly challenging the admissibility of testimony from Parker and Bradley.

## II.

We review defendant's forfeited evidentiary arguments for plain error. FED. R. CRIM. P. 52(b). Plain error exists where defendant demonstrates "(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (quotation marks omitted).

We review the imposition of an obstruction-of-justice enhancement under a three-part approach, reviewing the district court's finding of facts for clear error, its conclusion that the facts constitute obstruction of justice *de novo*, and the application of the enhancement itself *de novo*. *United States v. Chance*, 306 F.3d 356, 389 (6th Cir. 2002).

## III.

*a. Parker's Testimony*

Defendant argues that the district court should not have admitted Parker's testimony as it involved a confidential communication between a congregant and a member of the clergy acting as such. *See In re Grand Jury Investigation*, 918 F.2d 374, 384 (3d Cir. 1990) (extending privilege to "communications made (1) to a clergyperson (2) in his or her spiritual and professional capacity (3) with a reasonable expectation of confidentiality") (footnote omitted).

We have neither recognized nor rejected the clergy-communicant privilege. *Sampson v. Sisters of Mercy of Willard, Ohio*, No. 3:12cv824, 2016 WL 362357, at *2 (N.D. Ohio Jan. 29, 2016). This case does not require us to address the status of the privilege, given the circumstances of defendant's communication with Parker.

Regardless of whether a clergy-communicant privilege is available in this circuit, defendant had no "reasonable expectation of confidentiality" in his statements to Parker in a public place after Parker stated he was a mandatory reporter. *In re Grand Jury Investigation*, 918 F.2d at 384-85; *see also* 56 F.R.D. 183, 247 ("A communication is 'confidential' if made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication.") Defendant has failed to establish the predicate for an assertion of the clergy-communicant privilege. The district court did not plainly err in admitting Parker's testimony, or in later considering it at sentencing.

### b. *Bradley's Testimony*

Defendant also contends that the district court erred in admitting his ex-wife's testimony regarding statements he made during their marriage. We recognize the marital communications privilege, which "excludes confidential communications made by one spouse to the other during the marriage." *United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993). The privilege may be asserted by either spouse, even after divorce, and applies to "utterances or expressions intended by one spouse to convey a message to the other" made in confidence during a marriage recognized as valid by state law. *Id*. (citation omitted).

Defendant yelled an inculpatory statement to Bradley in his workplace parking lot, which was not an area where communications are reasonably thought confidential. Defendant's choice to yell the statement in an area where people are regularly present significantly diminishes any expectation of confidentiality. His statement is thus

excepted from the marital communications privilege. *See United States v. Klayer*, 707 F.2d 892, 894 (6th Cir. 1983). The district court did not plainly err in admitting Bradley's testimony.

### c. Sentencing

Defendant lastly challenges the reasonableness of his sentence in light of the district court's imposition of a two-level enhancement for obstruction of justice. Although the government argued both perjury and destruction of evidence as bases for enhancement, the district court discussed only the former in applying it.

### i. Perjury

To enhance based on perjury, the district court must find that defendant "testified falsely 'concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *Chance*, 306 F.3d at 390 (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)). The district court should address each element of perjury "in a separate and clear finding," but may apply the enhancement if it "makes a finding of an obstruction of, or impediment to, justice that encompasses all of the factual predicates for a finding of perjury." *Dunnigan*, 507 U.S. at 95.

In *Dunnigan*, the district court applied a § 3C1.1 enhancement for perjury where "the defendant was untruthful at trial with respect to material matters," where the failure to give truthful testimony was "designed to substantially affect the outcome of the case." *Id*. The Supreme Court affirmed the district court's finding of perjury on the basis that "numerous witnesses . . . contradicted" defendant's testimony. *Id*.

The district court below made an explicit finding that defendant's testimony was perjurious. It discussed the wide gap between his testimony and that of "everyone else that was involved in this matter," and found that it was "not even a close question" that defendant was untruthful. Under *Dunnigan* and *Chance*, this was enough to find perjury and thus obstruction of justice. *See Chance*, 306 F.3d at 390 (where testimony is "pervasively perjurious," a district court is "not required to cite the perjury line-by-line if its findings encompass the factual predicates for finding perjury").

### ii. Destruction of Evidence

Obstruction of justice includes "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding . . . or attempting to do so." U.S.S.G. § 3C1.1, cmt. n.4(D) (2014). The destruction must occur "upon learning that an official investigation has commenced or is about to commence." *Id*.

The record shows that defendant contacted Google to delete his account two days after Bradley told him he would go to prison, and after he met with Parker, who stated that he was a mandatory reporter. Moreover, defendant called the police to ask what type of trouble he could be in. Based on this evidence, the district court could conclude that defendant was aware that an official investigation had commenced or was about to commence, and intentionally attempted to destroy evidence material to it by deleting the Google account associated with his storage and transfer of child pornography.

The district court correctly applied the two-level enhancement whether based on perjury or destruction of evidence, and reasonably sentenced defendant accordingly.

**AFFIRMED.**